BEATTIE MANUFACTURING COMPANY, Respondent, v. HEINZ et al., Appellants.

St. Louis Court of Appeals, October 16, 1906.

1. **BUILDING CONTRACT: Liquidated Damages for Delay: Errors of Architect.** Where a building contract provided that the building should be completed in a stated time and that the builder should pay a certain sum as stipulated damages for every day's delay in completion of the building beyond the time agreed upon, and where the plans of the architect by which the building was to be constructed were not adapted to the

surface upon which the building was to be erected, the contractor was not liable for the daily liquidated damages for the delay in completing the work, caused by the necessity of adapting the building to the surface upon which it was erected.

2. ———: ———: ———: The rule that a party, who contracts to do a thing within a certain time regardless of contingencies that may arise, is liable for the non-performance in the time stipulated, does not apply in such case because the contractor was hindered by the fault of the other party.

3. ———: ———: ———: **Extra Work.** The contractor could also recover in such case for the extra work made necessary by the errors in the plans.

4. **ACCORD AND SATISFACTION: Waiver.** A dispute arose between a contractor and the owner of a building, which the former had erected, as to the amount due for its erection, and the owner sent his check for what he conceded to be due, with a letter stating that it was in full payment; the builder refused to receive it as full payment, but stated that he would take it up with the owner and afterwards made offers of compromise which were declined and the check was cashed; for two months afterwards correspondence was carried on between the two looking to a compromise. *Held,* the acceptance and cashing of the check under the circumstances was *not an accord and satisfaction.*

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*Wise & McNulty* and *Seddon & Holland* for appellants.

The court erred in rendering judgment for respondent on the first count of its petition. In this count the respondent sued on a contract, and its own testimony showed conclusively that it had been guilty of a breach of a condition precedent thereof. It, therefore, was not entitled to recover. (a) Because performance of a condition precedent is a prerequisite to recovery. Fitzgerald v. Hayward, 50 Mo. 516; Monks v. Merts, 13 Mo. App. 363; Rose v. Trestrail, 62 Mo. App. 352; McQuiddy

v. Brannock, 70 Mo. App. 535; Orange Growers v. Gorman, 76 Mo. App. 184. Construed in the light of surrounding circumstances, the contract shows conclusively that the alleged extra work that respondent claims it was forced to perform was embraced in the contract. Davis & Rankin v. Hendrix, 59 Mo. App. 444; Lumber Co. v. Warner, 93 Mo. 374; Hanna v. Land Co., 126 Mo. 1; Knapp v. Publishing Co., 127 Mo. 53; Edwards v. Smith, 63 Mo. 119; Bunce v. Beck, 43 Mo. 266.    (d) There was no testimony that the alleged errors in the plans prevented performance.    (c)    Under the testimony in this case the respondent had received all it is entitled to.    The balance of $3300 the appellants were entitled to withhold as liquidated damages.    Clark on Contracts, page 600; Railroad v. Stone Co., 90 Mo. App. 171. Menges v. Piano Co., 96 Mo. App. 283; Lime & Cement Co. v. Citizens' Bank, 158 Mo. 272; Morse v. Rathburn, 42 Mo. 594.

*Thomas G. Rutledge* for respondent.

(1)    Performance of a condition precedent is always excused where the performance was prevented by the other party.    (a)    When a contractor is prevented from completing his part of the contract within the time stipulated, owing to the hindrance or the fault of the owner, or to mistakes in plans furnished by him, the contractor is afforded a legal excuse for non-performance within the time limited, and any stipulated damages for delay are waived, and eliminated from the contract.    Bridge Co. v. St. Louis, 43 Fed. 768; Light Co. v. Wood, 61 Fed. 74; Dannant v. New York, 120 N. Y. 554; Mansfield v. Railroad, 102 N. Y. 205; Eldridge v. Fuhr, 59 Mo. App. 14; White v. School District, 159 Pa. 201; Haynes v. Baptist Church, 88 Mo. 285; Mullholland v. The Mayor, 113 N. Y. 631; Ocorr v. Little Falls, 178 N. Y. 622; Perry v. Levenson, 178 N. Y. 559; Lehman v. Webster, 209 Ill. 264; Guthrie v. Car-

penter, 162 Ind. 417. (b) In order to insist on a strict performance, the owner must not obstruct the performance in the least, by ordering changes, or furnishing defective plans. Even if he causes only part of the delay, the whole provision as to time is waived, as it is then impossible to apportion the fault, and the only question left is whether the contractor finished the work in a reasonable time. Weeks v. Little, 89 N. Y. 556; Fairbanks v. Jacobs, 69 Iowa 265; Sweeney v. Davidson, 68 Iowa 386; Van Buren v. Digges, 52 U. S. 461; Railroad v. Rust, 19 Fed. 245; Sedgwick on Damages, p. 611. (c) Even where the delay was the fault of both parties, the condition as to time becomes inoperative, as it is impossible to apportion the fault, the delay and the damages between them. Chaplain Constr. Co. v. O'Brien, 117 Fed. 271; Grube v. Schultheiss, 57 N. Y. 669; Starr v. Gregory Mining Co., 6 Mont. 485; Graveson v. Tobey, 75 Ill. 540; Long v. Pierce, 22 Wash. 348; Dumke v. Puhlman, 62 Wis. 18; Ortman v. National Bank, 49 Mich. 56. (2) As the extra work sued for was made necessary by mistakes in the plans, it was not within the scope of, or reasonably implied by the contract, and could not have been in the contemplation of the parties at the time the contract was signed. Railroad v. Bridge Co., 100 Fed. 197. (3) Where the contract provides that the work must be done entirely under the control and direction of the owner's architect, and where it must be completed to his satisfaction, if the work is done under his direction and completed to his satisfaction, that is a sufficient compliance with the contract, even though there is a penalty imposed for the delay. Phillips v. Seymour, 91 U. S. 646; Lee v. Railroad, 15 Fed. Cas. 220; Jacksonville v. Woodworth, 26 Fla. 380; Bridge Co. v. O'Connor, 88 Ky. 303. (4) There are five reasons why the defense of the payment is invalid. (a) The check for $950 was never accepted on the original terms of delivery, and there was never a meeting of

minds at any point so as to constitute an accord and satisfaction. (b) The conditions attached to its delivery were definitely withdrawn by appellants, and also subsequently waived by their conduct. (c) Appellants reopened the settlement one month after sending the check, but before it was cashed, and made a new proposition of settlement without condition. (d) Appellants never claimed a satisfaction of the claim after the check was cashed on July 28th, and never referred to the fact that the check was sent in full settlement after the one letter of June 29, accompanying the check. Prior to that time there had not been a dispute or question about the bill. (e) For two months after the check was cashed, appellants made efforts to settle on a new basis without condition, and seven letters passed between the parties to this end. 1 Am. and Eng. Ency. Law 422; Rubber Co. v. Peerless Co., 51 Vt. 588; Giboney v. Ins. Co., 48 Mo. App. 185.

STATEMENT.—On February 2, 1904, these parties entered into a written contract by which the defendant, a partnership, engaged the plaintiff, a corporation, to construct for defendant a booth or pavilion in the Agricultural Building of the Louisiana Purchase Exposition in the city of St. Louis. The booth was to be constructed according to plans, specifications and detail drawings to be prepared by Vrydaugh & Wolf, Architects; said plans, drawings and specifications being made a part of the contract and a copy of the specifications attached to it. It was further provided that the work should be done in accordance with the regulations of the Exposition authorities. The booth was to be finished on or before April 16, 1904, and in default of its completion defendants were to be entitled to one hundred dollars per day liquidated damages until it was completed. The total contract price was $8,500. The booth was not finished until May 25th and by reason of the delay defendants claimed a deduction from the agreed price of $3,300,

which plaintiff refused to concede. On June 30, defendants wrote a letter to plaintiff expressing regret that the booth was not completed by the stipulated date and inclosing a check for $950, the balance defendants asserted was due plaintiff under the contract. A voucher accompanied the check showing the latter was tendered in full payment of the balance of plaintiff's demand. This conclusion was reached in the following manner; from the total contract price of $8,500 defendants deducted $3,300 for liquidated damages due to delay, leaving $5,200; from which certain payments made during the progress of the work amounting to $4,250, were deducted, leaving a balance of $950, the amount of the check. On receipt of this check plaintiff wrote a letter acknowledging its receipt, but refusing to accept it in full payment of the demand, saying it would be held in abeyance awaiting defendants' reply. Some correspondence ensued between the parties in regard to the matter and later one of the defendants came to St. Louis to attempt to settle with the plaintiff. No definite arrangement resulted from the interview between the parties, but the evidence goes to show an additional sum over and above the $950 for which plaintiff held defendants' check, was offered by defendants in settlement. The negotiation was ended by the statement of the defendant who came to St. Louis that the matter would be taken up when Mr. Heinz returned from Europe. Further correspondence in regard to the dispute followed through the month of September, 1904, but no settlement was reached and this action was brought for the balance plaintiff asserts is due on the original contract price; that is to say, $3,300, and $321 for extra work said to have been done on the booth.

The defenses to the action are the delay in the completion of the booth, which is alleged to entitle defendants to a deduction of $3,300 from the contract price, and an accord and satisfaction by virtue of plaintiff's

having retained and deposited defendants' check for
$950 sent to it to pay the balance defendants contended
was due.  It should be stated that this check was held
by plaintiff for several weeks and not cashed or deposited
until after the interview with the defendant who came
to St. Louis.  Plaintiff's contention in regard to the
delay in putting in the booth is that it was occasioned
by defendants and hence the latter are not entitled to
damages on account of it.  The pavilion to be erected
was of intricate and elegant workmanship, adorned with
carved woods, marble and brass, with arches, columns,
curved stairs, pagodas and other parts of such form and
details that they had to be manufactured in plaintiff's
factory and were made there preparatory to being put
in position in the Agricultural Building.  The contract
designated the portion of the floor on which the booth
was to be built, to-wit; the south half of section 108.
When plaintiff attempted to erect the booth on that
space after its different parts had been constructed in
the factory, the floor of the building was found to have
a fall of seven inches instead of being level, and there
is evidence to prove that this slope in the floor made it
necessary to reconstruct many parts of the booth and,
in fact, occasioned most of the delay in finishing it; as
the regulations of the Exposition Company forbade
plaintiff to erect a level platform over the uneven space
the booth was to occupy.  The remainder of the delay
was due to mistakes in the plans and specifications re-
specting the second story and the dome.  Defendants
contend that it was the duty of plaintiff to ascertain
the condition of the floor before the parts of the booth
were constructed and that it was remiss in not doing
so; hence was liable for the delay and not entitled to re-
cover for the extra work done because of the pitch of
the floor.  Plaintiff, on the contrary, contends that as
the plans and specifications prepared by defendants'
architects showed a level floor, it had the right to take

for granted that the designated space where the booth was to be erected was level and prepare the parts of the booth on that assumption. As to the defense of accord and satisfaction, the evidence of plaintiff is that it held defendants' check for several weeks after notifying them that it would not be accepted in full payment and only cashed it subsequent to an offer to pay a larger amount in settlement. Further, that defendants never regarded nor treated the cashing of the check by plaintiff as an acceptance of its offer of $950, but looked on the check as but a partial payment on plaintiff's demand and thereafter negotiated regarding the balance claimed.

The case was tried without a jury, several declarations of law being given at the instance of plaintiff which are matters of exception on this appeal. Judgment was in favor of plaintiff on the first count of its petition for $3,300 and interest and on the second count for $321 and interest. From this judgment defendants appealed.

The instructions of which defendants complain are these:

"If the court, sitting as a jury, finds from the evidence that the contract under which the work was done required the plaintiff to complete the booth according to the plans, specifications and detail drawings furnished by the architects of the defendants, then there was an implied contract that the plans were correct, and the plaintiff was justified in trying to do the work in accordance therewith.

"If the court, sitting as a jury, finds from the evidence that there was a mistake in the level, as shown by the plans prepared by the defendants, and that after plaintiff discovered said mistake, it undertook as speedily as possible to remedy the defect, and that the defendants approved the course taken by the plaintiff in connection therewith, and that plaintiff was thereby delayed in the completion of the work, and that the de-

fendants approved or directed certain changes on the second floor partitions and on the column on the dome, owing to further defects in the plans, and that such other work was done by plaintiff in order to carry out the plans, and that the plaintiff was thereby delayed in the completion of the work and made all reasonable efforts to complete the work without unnecessary delay, that then the plaintiff was excused from the obligation to complete the work by April 15th, and had a reasonable time in which to perform its part of the contract.

"If the court, sitting as a jury, finds from the evidence that the plaintiff did extra work entirely outside of the contract, but necessary to the construction of the booth and which was ordered to be done or accepted after completion by the defendants, and arising from causes for which plaintiff was not responsible, then it is entitled to recover the reasonable value of such extra work.

"The court states the law to be that where one party to a contract demands strict performance as to time by another party, that he must perform on his part all of the conditions which are requisite in order to enable the other party to perform his part, and a failure on the part of the party demanding performance to furnish correct plans in order to enable the other party to complete his contract within the time limited, if such failure caused delay in the performance of the contract, operates as a waiver of the time provision.

"If the court finds from the evidence that the plaintiff was delayed in completing its work by April 15, 1904, owing to the fault of the defendants, that in such event the provision allowing damages at the rate of $100 per day thereafter, should there be a delay in completing the contract, is as effectually eliminated from the contract as if the parties had cancelled it by express contract. And the plaintiff in such event had a reasonable time for performance, and is only bound for such actual damages as may be proved against it, provided it delayed beyond a reasonable time in the completion of the work.

"If the court, sitting as a jury, finds from the evidence that after the check for $950 was sent by Heinz to the Beattie Co., that the Beattie Co. refused to accept or receive it in full satisfaction of its claim and so notified the defendants, and also that it would hold the check in abeyance, and that thereafter the defendants notified plaintiff that one of the defendants would take up with plaintiff the matter of settlement, and that defendant R. G. Evans came to St. Louis for the express purpose of settling the claim of plaintiff, and knew that the check for $950 had not yet been cashed, and made other and further propositions of settlement and led the plaintiff reasonably to believe that another form of settlement would be carried out, that thereafter, on July 28, 1904, the plaintiff cashed said check, and that thereafter for nearly two months the parties conducted a correspondence regarding a different settlement of the claim of plaintiff, and that defendant at no time during or after the visit of Evans in July insisted that the check was sent or must be received or accepted in full settlement, that then in the acceptance and cashing of said check the plaintiff took it and cashed it free from the conditions originally attached to it by plaintiff, which the court finds were waived by defendants."

GOODE, J. (after stating the facts).—The plaintiff was bound to observe in every particular, the drawings, plans and specifications prepared by defendants' architects. Many clauses in the contract so provided, and there were other clauses providing for the enforcement of this duty. The plans took for granted that the floor of the Agricultural Hall, at the south half of section 108, was level, and contemplated the erection of a booth on that level surface. The floor line shown on the drawings is level and the plan of the marble base of the booth provided for a base of the uniform height of six inches around the entire structure; thus indicating that the surface on which it was to be built was level, as other-

wise the base would be wider in some portions than in others. Various details and dimensions of the structure pointed to the same assumption. One clause of the contract was that plaintiff should lay a finished floor on top of the rough floor of the Hall and flush with the aisle; a requirement which, read in connection with the uniform width of base required, obviously presupposed the floor of the Agricultural Building was level. That this was the supposition of the architects is not denied; but it is contended that as plaintiff knew the floor of the building had been laid, it was remiss in not ascertaining by measurements whether or not it was level, before preparing the parts of the booth at its factory. No term of the contract imposed that duty on plaintiff, nor is there proof that the custom of builders did. What plaintiff was bound to do was to construct the booth according to detailed drawings, plans and specifications prepared by architects chosen by defendants; and not correct those documents except to verify the dimensions given; an expression which, in the absence of proof on the subject, we take did not impose on plaintiff the duty of ascertaining whether or not the architects had proceeded on a radically erroneous theory in drawing the plans. We know of no principle of law on which we can read into the contract a requirement that plaintiff was to take the level of the floor before going to work, and notify defendants that the plans of its architects would have to be remodeled. If the case is to stand on the negligence of the parties, then that of the defendants, or their architects, is the greater in not ascertaining that the floor was level before they prepared all the plans and details of so costly a structure on the supposition that it was. Our opinion is that the proper interpretation of the contract is that plaintiff was justified in taking for granted that the rough floor on top of which it was to lay a smooth one and build the marble base of the booth, was level, as shown in the plans and specifica-

tions. In other words, that defendants agreed to furnish the requisite surface for plaintiff to build on. [Haynes v. Second Baptist Church, 88 Mo. 285; King, etc. Co. v. St. Louis, 43 Fed. 768; Wyandotte, etc., R. R. v. King Bridge Co., 100 Fed. 197, 204; White v. School Dist., 159 Pa. 261.] We hold defendants were not entitled to deduct the daily liquidated damages for the delay in completing the booth caused by the unevenness of the floor. The delay caused by the errors in the plans of the second story and the dome was unquestionably the fault of the architects, for which plaintiff cannot be held responsible. The rule of law that, if a party contracts to do a thing in a certain time, without exceptions on account of contingencies which may arise, he is liable for non-performance in the time stipulated though unavoidably prevented from performing, is not applied when he is hindered by the fault of the other party. [Helm v. Wilson, 4 Mo. 41; Little v. Mercer, 9 Mo. 218; Weeks v. Little, 89 N. Y. 566; Van Buren v. Diggs, 52 U. S. 461.] All the extra work for which plaintiff recovered was a consequence of the several errors in the plans we have recited and was authorized by the architects. The booth could not be built according to the plans, and by the contract plaintiff was required to follow them. It endeavored to do this and in the endeavor constructed the various parts, but the slope in the floor and the errors in the plans of the second story and the dome, made it necessary to work over many of these parts. No reason is seen why plaintiff should not be compensated for this work, which the contract plainly did not contemplate should be covered by the agreed price.

It is insisted that an accord and satisfaction was established by proving plaintiff cashed the check sent to it for acceptance in full payment of the balance due. This position would be well taken were it not for the acts of the defendants subsquent to the tender of

the check; but those acts preclude us from holding there was no evidence to support the trial court in finding the acceptance of the check was not regarded as full payment, or an accord and satisfation, by either party. Plaintiff positively refused to take the check in payment of the balance demanded and notified defendants it would be held in abeyance pending further negotia. tion for a settlement. One of the defendants came to St. Louis while plaintiff still held the check, and offered to compromise by making a payment in addition to the amount of the check. When the offer was declined by plaintiff, said defendant left without demanding the return of the check and with a promise that the effort to settle should continue. If it be conceded that cashing the check after this incident would still have constituted an accord and satisfaction, we have the further fact that nearly two months after it had been cashed, and when, in view of the usage of business, it may be inferred that defendants were apprised that it had been, they still carried on a correspondence looking to a compromise and a further payment. In other words, did not elect to treat the matter as having been settled by an accord and satisfaction. This circumstance was evidence to support the finding that defendants had waived any defense they might otherwise have maintained because of plaintiff's use of the check. Cashing it could be an accord and satisfaction only by construction of law and on the theory that defendants had tendered it in satisfaction and if it was accepted, the presumption would be raised in their favor that it was accepted on the condition attached to the tender. Now commonly an accord and satisfaction is what the words import, namely, an actual agreement about a matter in dispute and a settlement pursuant to the agreement. [Schermerhorn v. Laines, 7 Johns. (N. Y.) 311; Hart v. Baller, 15 S. & R. 162.] No doubt the tender of a note or check in full satisfaction of a controversy and its unconditional acceptance

will estop the accepting party from asserting that the dispute remained unadjusted. [Jarrett v. Morton, 44 Mo. 275.] But if the party who tendered the payment, in whatever form, shows by his subsequent behavior that he does not insist on the condition originally attached, to-wit: that it be received in full satisfaction, and by still later conduct, after he knows the payment has been applied by the creditor, shows that he regards the matter as still awaiting adjustment, no accord and satisfaction ought to be presumed in his favor.

The declarations of law are all complained of, but need not be separately examined; as it appears from them that the court tried the cause and declared the law according to the views we have expressed.

The judgment is affirmed. All concur.