# CHARLESTON.

JOHN PARKE, SURVIVING PARTNER, *etc.* v. PENCE SPRINGS COMPANY.

Submitted May 22, 1923.   Decided June 27, 1923.

1. DAMAGES—*Stipulated Sum Per Day to be Paid by Contractor for Delay in Completion of Building Held in Nature of Liquidated Damages, and not a Penalty.*

   Where a building contract provides that a Hotel Building is to be completed and ready for occupancy as a hotel by a certain time fixed in the contract, which contract provides that a bonus of twenty-five dollars per day will be paid the contractors for each and every day remaining after the building is completed, before the day fixed in the contract for its completion, and further provides that the contractors will pay the owners twenty-five dollars per day for each and every day the building remains incomplete after said time fixed in the contract for its completion. Held, that the twenty-five dollars per day to be paid for delay in the completion of the building is in the nature of liquidated damages and not a penalty.   (p. 388).

2. CONTRACTS—*Decision of Architects, Under Contract Providing them Sole Arbiters in Questions of Delay in Construction of Building, Final and Conclusive.*

   Where a contract provides that, "Should the contractors be delayed in the prosecution or completion of the work by the act, neglect or default of the owners, of the Architects, or of any other contractors employed by the Owner upon such work, or by any damage caused by fire or other casualty for which the Contractors are not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on the part of the Contractors, then the

time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid, which period shall be determined and fixed by the Architects." The architects are made the sole arbiters of all questions of delay arising under the contract, and if the architects, in good faith, pass on all claims for delay made by the contractors, their decision on such claims are final, and conclusive.   (p. 389).

3.  SAME—*Where Building Contract Does Not Authorize Architect as Arbiter For Delay in Construction, Owners not Bound by Statement Not Including Such Damages.*

Where a building contract does not authorize the architect to waive the claim of the owners for liquidated damages for the failure to complete the work within the time fixed by the contract, a final statement made by the architects showing the amount due the contractors for the work performed by them on the building, which does not include or mention said damages, is not conclusive against the owners, and in a suit brought by the contractors against the owner for the amount shown by said final statement the owner may set up said liquidated damages in a notice of recoupment, and, if so shown by the proof in the case, it should be allowed as a credit on plaintiff's demand to the extent of their claim. (p. 389).

4.  SAME—*Where Liquidated Damages for Delay in Construction of Building Exceed Amount of Contractor's Claim, Not Erroneous to Direct Verdict for Defendant.*

In a case wherein the defendant files a notice of recoupment, setting up liquidated damages to the extent of plaintiff's demand, and the liquidated damages, as shown by the evidence, exceed the amount of plaintiff's claim, it is not error in the lower court to direct a verdict for the defendant. (p. 389).

Error to Circuit Court, Summers County.

Action by John Parke, surviving partner of Parke, Grimes & Co., a copartnership, against the Pence Springs Company.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* and *R. F. Dunlap,* for plaintiff in error.

*Vinson, Thompson, Meek & Renshaw,* and *T. N. Read,* for defendant in error.

McGINNIS, JUDGE:

This is a writ of error to a judgment of the Circuit Court of Summers County, in an action of assumpsit, brought by the plaintiff, John Parke as surviving partner of Parke-Grimes & Company, a partnership, against the Pence Springs Company, a corporation.

The object of this action was to recover from the defendant, the sum of $4735.94 represented by the plaintiff to be the unpaid balance on the contract price for the construction of the Pence Springs Hotel at Pence Spring, West Virginia, by which the plaintiff agreed to provide all materials, and perform all the work, and complete the building on or before July 1, 1917 for $33553.00, which amount, as claimed by the plaintiff, includes $609.99, charged by the plaintiff for hauling 225,000 brick.

At the March term of said court, the defendant demurred to the declaration filed in the case, and the demurrer was overruled, thereupon the defendant filed a special plea of payment, which plea sets forth that the defendant had paid to the plaintiff at various times before the institution of this suit the aggregate sum of $37,282.17.   There is no controversy about this payment, the plaintiff claims that by reason of extra work done and materials furnished, that the defendant, notwithstanding the payment aforesaid, still is indebted to him the said sum of $4735.94.   There was also a plea of non assumpsit filed, and a notice of recoupment.   The case was tried on these issues on January 10th and 11th 1921 and, at the conclusion of the evidence, the court, on motion of counsel for the defendant, gave to the jury a peremptory instruction to find for the defendant, and a verdict was accordingly rendered; a motion was made to set aside said verdict, which was overruled and judgment was thereon accordingly entered.

It appears from the record, that Parke-Grimes & Company, a partnership, of which the Plaintiff John Parke is the surviving partner, was, in the year 1916, engaged in business as building contractors with principal offices at Chattanooga, Tennessee; that on or about December 20, 1916, this partner-

ship entered into a written contract with the defendant, Pence Springs Company, a corporation, for the construction of a hotel building at Pence Springs, West Virginia, to be known as the Pence Springs Hotel; which building was to be built and completed in accordance with the plans and specifications prepared by Meanor and Sweeney, architects of Huntington, West Virginia, and was to be ready for occupancy as a hotel, on or before July 1, 1917.    The building was not completed within the time specified, in fact was not completed until June 4, 1918.  In defendant's notice of recoupment it claims, under article VI of the contract, that it is entitled to be allowed $25.00 per day from July 1, 1917, to June 4, 1918, as liquidated damages.  However, on the trial, the defendant waived all claim for liquidated damages accruing after February 19, 1918, at which time the defendant took over the work and completed the building on June 4, 1918, and the main questions of dispute in this case arose from the construction and application of articles VI and VII of the contract.    Article VI of the contract is as follows:

> "Art. VI.  The contractors shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time hereinafter stated, to wit:  The contractors agree to complete the building and have it ready for occupancy as a hotel by the first day of July, 1917.  A bonus of $25.00 per day will be paid the contractors for each and every day remaining after the building is completed as herein provided before July 1st, 1917, and the contractors will pay to the owners $25.00 per day for each and every day the building remains uncompleted after July 1st, 1917."

Article VII of the contract is as follows:

> "Art. VII.  Should the contractors be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, of the architects, or of any other contractors employed by the owners upon the work, or by any damages caused by fire or other casualties for which the contractors are not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on the part of the contractors, then the time herein

> fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architects; but no such allowance shall be made unless a claim therefor is presented in writing to the architects within forty-eight hours of the occurrence of such delay."

The plaintiff insists that the clause in the contract requiring the contractors to pay the owners $25.00 per day for each and every day the building remains incomplete after July 1, 1917, is a penalty and not liquidated damages, and cannot, for that reason, be set up against the plaintiff's claim, and the plaintiff has correctly stated the law in the brief of his counsel, in which he says:

> "It is, of course, elementary that if the provision is a stipulation for liquidated damages, it can be set up against the demand of the plaintiff, but if it is a penalty provision it cannot be set up."

To support the contention of the plaintiff on this question the plaintiff's counsel cited, *Wheeling Mould and Foundry Company* v. *Wheeling Steel and Iron Company,* 58 W. Va. 62; and *Charleston Lumber Company* v. *Friedman,* 64 W. Va. 152, and particular attention is called to the latter case. The defendant also relies on the cases cited above to support its theory that the $25.00 referred to in said article of the contract is for liquidated damages.

In the first case referred to, the defendant entered into a written contract with the plaintiff by which the plaintiff was to manufacture, and deliver, to the defendant certain Pipe Mill Machinery. The contract recited that the contractor had full knowledge of the owner's requirements in regard to the machinery and full knowledge that the building of the machinery was to be begun forthwith and that it was necessary that it should be delivered at Benwood, W. Va., on or before January 14, 1902:

> "Among other things, the contract provided, in effect, that the contractors should not further engage its capacities so as to militate against the manu-

facturer and deliery of the machinery at Benwood, W. Va., by noon of January 14, 1902, that neither party should be liable to the other in damages for delays due to wars, strikes, fires or accidents beyond their control; that in case of delay from any of said causes a certificate for the time lost should be required; that all drawings furnished the contractor should remain the property of the owner and be returned to it on completion of the work; that the owner should furnish certain materials including motors to be used in, and in connection with the manufacture of the machinery to be manufactured and delivered by the contractor; that all the foundation should be prepared by the owner; that in consideration of the faithful carrying out of the said contract, together with all its various stipulations, and the delivery of the machinery at Benwood, West Virginia, by noon of January 14, 1902, the owner should pay the contractor $58,526.00; that if the machinery could be delivered before the date specified, $50.00 per day should be added to the contract price for each day of twenty-four hours that the machinery should be delivered before the date specified; that in case of delay, $50.00 for each day of twenty-four hours required to complete and deliver the machinery beyond the time specified, should be deducted from the contract price.''

In all essential parts the contract is similar to the contract in controversy in this case, and Syl. 1 of this case is as follows:

"Under the contract sued on, the plaintiff was to manufacture and deliver to the defendant certain machinery, at a time and place specified, at a price specified, and in case of failure to complete and deliver the machinery at such time and place, fifty dollars was to be deducted from the contract price for each day required to complete and deliver the machinery beyond the time specified. Held, that the fifty dollars per day to be deducted for delay in the completion and delivery of the machinery, is in the nature of liquidated damages and not a penalty."

The case of *Lumber Company* v. *Friedman*, involved a contract for building a store house in the city of Charleston, and

the clause referring to damages for failing to complete the building within the specified time, is as follows:

> "Should the said contractor fail to finish and complete the said works at or before the time set forth, they shall pay to said owner by way of liquidated damages $10.00 per day for each and every day thereafter that said work remains incomplete and unfinished, unless the time be extended as hereinafter provided for."

The court held that this $10.00 was for liquidated damages, and laid down two rules for inferring that the parties by naming in a contract a sum to be paid for its breach, intended it to be as liquidated damages and not a penalty:

> "Rule 1, where the damages are uncertain and not capable of being ascertained by any satisfactory or known rule, whether the uncertainty lies in the nature of the subject itself, or in the particular circumstances of the case;
>
> Or (2), where from the nature of the case and the tenor of the agreement, it is apparent that the damages have already been the subject of actual and fair calculation and adjustment between the parties."

And further quoting from Judge BRANNON:

> "Provisions in a binding contract that the contractor shall pay a certain sum per day if the building is not completed by the time agreed upon are generally held to be for liquidated damages if reasonable in amount. Thus in a case of a contract for erection of a building a provision for the payment of fifty dollars a day, twenty dollars a day, ten dollars a day or five dollars a day, have each been held to be valid liquidated damages, where not greatly in excess of the actual damages caused by the delay."

Again quoting from 13 cyc., 90:

> "The contract is to govern and the true question is, what was the contract? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence if it is clear. If there be no fraud or circumvention or illegality in the case the court is bound to enforce the agreement."

In this particular case, there is no satisfactory or known rule by which damages for failure to complete the work contemplated by the contract by July 1, 1917, could be ascertained. The building was to be constructed for a hotel, and under the contract, was to be ready for occupancy as a hotel by the first of July, 1919. We, therefore, conclude that the $25.00 per day for failure to complete this building within the time fixed by the contract is for liquidated damages.

The plaintiff contends that the certificate given him by the architects on June 15, 1918, was a final certificate and that it is conclusive upon the parties and renders inoperative the damage clause in the contract. Under the evidence in this case, this position is untenable. The architects, under the contract, had no authority to waive these damages. The architects notified plaintiff that the owners would insist on full compliance with the clause of the contract referring to these damages, and that he would issue a certificate to the contractors but that it would not include the defendant's claim for damages.

There were many changes made and considerable extra work done on the building after the work had been started, not contemplated in the contract; and there were many claims on the part of the plaintiff for extension of time for the completion of the work and for as many reasons; and the architect allowed thirty days extension of time to the contractors. Twenty days for addition to the west wing of the building and ten days on account of bad weather. On February 16, 1917, plaintiff wrote to the architects at Huntington asking for twenty days additional time for the completion of the building, we quote from the letter as follows:

> "Beg to advise that the writer and Mr. Parke has gone over the question very thoroughly, and we feel satisfied that we could build the building with addition in practically the same length of time as building without addition. However, because of car shortage, labor conditions, etc., we feel that we must protect ourselves by asking twenty days additional time."

In reply to that letter and several others, of a similar

nature, asking for extensions of time for the completion of the work, the architects allow the tewenty days mentioned above, and ten days for bad weather, and refused to, allow any further extensions of time. On all these questions of extension of time for the completion of the work the parties made the architects the sole arbiters to determine and fix the number of days for which the completion of the work should be extended from July 1, 1917. The architects acted under this authority given them, under article VII of the contract and determined and fixed thirty days as the time for which the completion of this work should be extended, and their decision in this case, under the contract, is conclusive. There is no evidence of fraud or bad faith upon the part of the architects. *Plumbing Company* v. *Carr,* 54 W. Va., 272; *Barrett* v. *Coal Company,* 51 W. Va., 416.

In *Plumbing Company* v. *Carr I. B.,* Judge BRANNON discusses and cites many cases bearing upon contracts of this character, and upon the effect of a clause in written contracts, making the architects, or some other person, the sole arbiter upon disputed questions; and, again, in *Barrett* v. *Coal Company,* 51 W. Va., at page 418, the same learned Judge in passing upon the same principle of law, asks:

> "Why is this the law? Because so the bond is writ. Though it takes the pound of flesh so the bond is writ."

We are not unmindful of the fact that 20 days of this additional time was allowed for the right wing of the building not contemplated by the contract, and this extension was agreed upon by the parties and all the other claims by the plaintiff for extensions of time for the completion of the contract, came under article VII of the contract and are, by the terms of the contract, to be fixed and determined by the architects. The architects, evidently, came to the conclusion that none of the claims made by the plaintiff were just claims, except he doubtless thought that an extension of ten days should be allowed the contractor on account of bad weather, which bad weather so allowed as an extension of

time, was in addition to bad weather conditions which should have been taken into consideration at the time the contract was entered into. The contract was entered into December 20, 1916 and the work was to be completed July 1, 1917. Can it be said that the contractors expected to encounter no bad weather conditions between these two dates? No. The building was to be begun in mid-winter and was to be completed on or before July the 1st.

The claims of the plaintiff for the delays caused by the world war, we think the architects were justifiable in disallowing these claims for extension of time. We think that his refusal to allow these claims was justified from the fact that the condition of this country at the time the contract was entered into was such that the possibility of this country entering the war was, to say the least, not remote; War was on the lips of everybody and the newspapers were full of it, the whole country, at that time, was in a state of nervous expectancy on account of it, and the possibility of the country entering the war should have been taken into consideration, by the plaintiff, at the time the contract was made; and, aside from the fact that the plaintiff should have contemplated war conditions at the time the contract was made, there was ample time for the plaintiff to get all the material required for this building on the ground before, war was declared. But, be that as it may, all the extensions of time for the completion of this work claimed by the plaintiff were directly, under the terms of the contract, matters to be determined and fixed by the architect except, possibly, the construction of the additional wing of the building; and this extension was agreed upon. This is the construction placed upon the contract by the parties.

Practically all the claims for extension of time are based on, "Casualties for which the contractors are not responsible." These claims were all submitted by the plaintiff to the architect by letters addressed to them. On April 20th the contractor wrote the architects making claim for delay on account of non delivery of framing lumber, from which we quote:

"And failure to have on building site is due to car shortage, etc., over which we have no control, and which is covered in the general contract."

"The practical construction put by the parties upon the terms of their own contract is not only to be regarded, but, where there is any doubt, must prevail over the literal meaning of the contract."

*Koff* v. *Richmond, Fredericksburg and Potomac Railroad Company,* 85 Va., 769; *District of Columbia* v. *Gallagher,* 121 U. S. 505.

Allowing the defendant $25.00 per day from the 1st day of July, 1917 to Feb. 19. 1918, after deducting the 30 days extension allowed by the architects, amounts to $5075.00, which amount is $239.06 more than plaintiff's claim and, under defendant's notice of recoupment, it is entitled to recoup so much of this amount as is sufficient to cover the plaintiff's demand.

We, therefore, affirm the judgment.

*Affirmed.*