M. E. GILLIOZ, Appellant, v. STATE HIGHWAY COMMISSION.—153 S. W. (2d) 18.

Division One, July 11, 1941.

212

*Finch & Finch, H. P. Lauf* and *Ward & Reeves* for appellant.

214

*James T. Blair, Jr., Louis V. Stigall* and *Ralph M. Eubanks* for respondent.

 HYDE, C.—This is an action in three counts, as follows: Count I to recover $32,500 deducted from the amount due plaintiff, under his contract for reconstruction of the Inter-City Viaduct in Kansas City, for liquidated damages (at the rate of $500 per day) for failure to complete the viaduct for traffic within the specified time; Count II to recover $57,515.67 as damages claimed to have been caused by reason of delays in the work due to the fault of defendant; and Count III to recover $28,609.80 as damages to plaintiff's subcontractor alleged to be due to same causes claimed in Count II, this claim having been assigned to plaintiff. The trial court directed a verdict as to Count III (plaintiff made no claim of error, by motion for new trial or otherwise, as to this action); and the jury found for defendant on Counts I and II. Plaintiff appealed from the final judgment of dismissal entered.

Plaintiff's assignments of error go to defendant's instructions and to rulings on admission of evidence. Defendant contends that any such errors are immaterial because its instructions, in the nature of demurrers to the evidence as to Counts I and II, should have been given on account of plaintiff's failure to comply with the conditions of the contract relating to arbitration. It also contends that a verdict should have been directed as to Count II because of failure to comply with conditions of the contract requiring the filing of an itemized written claim.

 As to this latter matter, the contract provision was, as follows: "H-12. *Claims and Legal Rights.* As a condition precedent to the filing, by either party in any court, of any action arising out of the contract, notice of claim shall be given the other party as follows: Within sixty (60) days after the release of the retained percentage, the complainant shall file with the other party a full, complete, and itemized written statement of all claims of any character which he may have against the other party arising out of the contract and, within sixty (60) days after such claims are filed, said other party shall mail to the complainant a full, complete, and detailed statement of any claims of any character which he may have against the complainant; and any claim not included in said notices of claim, or any claim so included but not specifically set forth and itemized, shall be deemed waived and shall neither constitute the basis of,

nor be included in, any legal action between the parties, nor in any counterclaim or set-off in any such action.''

Plaintiff's claim for damages in Count II is based on extra labor cost and additional time of use of machinery. Such provisions for notice of claim by express agreement of the parties have been generally upheld as valid. [1 Am. Jur. 428, sec. 35; 1 C. J. S. 1067, sec. 26; use developed in carrier's contracts, 9 Am. Jur. 914-929, secs. 796-812; 13 C. J. S. 461-495, secs. 234-241; Insurance Contracts, 29 Am. Jur., sec. 1099 et seq.] Plaintiff does not claim invalidity or non-applicability of this provision. He did give timely notice thereunder of his claim for return of the amount withheld for liquidated damages, sued for in Count I. Plaintiff, however, claims waiver of this provision, by reason of a conversation between his general superintendent, Mr. Maring, and defendant's construction engineer, Mr. Corbett. Mr. Maring testified that, at a conference soon after the completion of the viaduct, Mr. Corbett said the only way plaintiff could get the liquidated damages refunded was to sue defendant and get a judgment. Mr. Maring then said: ''We told Mr. Corbett that if we were forced to have this additional delay on receiving our liquidated damages that we would also in our lawsuit be forced to include a claim for damage, other than liquidated damages, which we had suffered through their delay. Mr. Corbett advised that the state would not and could not pay that, and we would have to include that in our lawsuit.''

There is nothing to show that Mr. Corbett was informed as to the details or items of any such claim, as required by provision H-12 of the contract, or even the amount to be claimed. Moreover, there is nothing to in any way indicate that he had authority to waive the filing of such a statement of the claim for defendant. The contract provided that defendant's ''assistants and representatives shall not be authorized to revoke, alter, enlarge, relax or release any requirements of the special provisions, specifications, or contract.'' Plaintiff cites insurance cases holding there could be waiver by an agent's denial of liability, or by denial or breach of the contract, but cites no cases applying such rules of waiver to public contracts. As we said in Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 149 S. W. (2d) 828: ''We are here dealing with a public contract, and under the law of this State such a contract must be definite and specific as to what is authorized to be done and compensation to be received. This contract could only be made in accordance with the authority granted by the Legislature. (Citing statutes.) The inspectors and engineers had no authority to vary its terms and it specifically so stated.'' [See also Hawkins v. United States, 96 U. S. 689, 24 L. Ed. 607; American Sales Corp. v. United States (C. C. A.), 32 Fed. (2d) 141; Carter-Waters Corp. v. Buchanan County (Mo.), 129 S. W. (2d) 914, and cases therein cited.] We hold that there

was no waiver, and rule that defendant's demurrer to the evidence as to Count II should have been sustained. Therefore, the judgment of final dismissal (with prejudice) of Counts II and III must be affirmed.

■ Concerning the demurrer to the evidence as to Count I (based on conditions as to arbitration) defendant relies upon the following provisions:

"H-13. Disputes to be Arbitrated. Whenever a dispute or controversy arises between the parties on any matter involving compensation to the Contractor for work actually performed by him but not allowed for payment by the Engineer, or involving the amount or rate of payment under the contract, or concerning claims for extra payment filed by the Contractor and for any reason not allowed by the Engineer, then the same *may*, by either party, be referred to a board of arbitration for decision and award.

■ "H-13(a). Demand for Arbitration. Either party *desiring* to submit a claim for arbitration shall not do so until a detailed statement of said claim containing an exact enumeration of the items claimed together with the reasons therefor shall have been submitted in writing to the adverse party in accordance with section H-12. . . . After (compliance with certain other conditions) then he *may* within thirty (30) days, by directing to the adverse party a written demand have the dispute referred to a board of arbitration for decision and award. Should the complaining party fail to demand arbitration within the thirty (30) days stipulated, all rights to arbitration hereunder shall cease."

This provision does not make arbitration (in whole or in part) a condition precedent to the filing of an action as is true of the notice required under H-12. (Which is likewise a condition precedent to obtaining arbitration.) It is difficult to see what usual legal action there could be on or arising out of a contract after a complete arbitration. [See Pope Construction Co. v. State Highway Commission, 337 Mo. 30, 84 S. W. (2d) 920.] Our statutory plans for arbitration (Secs. 15233-15260, R. S. 1939, secs. 14016-14043, Mo. Stat. Ann. 552-562) do not so contemplate; and neither do the provisions of the contract prescribing arbitration procedure, H-13(a)-H-13(h), which in accordance therewith, provide for a judgment upon the award by the Circuit Court of Cole County. Section 15233 specifically provides that compliance with an arbitration clause (to have a complete arbitration) shall not be such a condition precedent. [See Dworkin v. Caledonian Ins. Co., 285 Mo. 342, 226 S. W. 846; see also 3 Am. Jur., 856-865, secs. 29-36; 6 C. J. S., 168-171, secs. 28-29.] We think it is clear from reading provision H-13, and the procedure provided in the subdivisions following it, that it was only intended that arbitration should be at the option of either party. It is not contended here that there was a demand for arbitration by anyone. Defendant

also cites provisions of the contract concerning the authority of the engineer to determine the acceptability of work done, materials used, manner of performance, interpretation of plans, etc., saying his decision was final; and contends that, in the absence of an arbitration award to the contrary, he has finally terminated plaintiff's rights to the return of the amount retained as liquidated damages, citing United Const. Co. v. City of St. Louis, 334 Mo. 1006, 69 S. W. (2d) 639; Myers v. Union Electric L. & P. Co., 334 Mo. 622, 66 S. W. (2d) 565; and Williams v. Chicago, S. F. & C. Ry. Co., 112 Mo. 463, 20 S. W. 631. However, in these cases there was no attempt to have the owner's engineer pass upon the conduct of the owner, or to determine his right to damages, liquidated or otherwise, but only to fix the amount due the contractor by determining what work actually the contractor did. The provisions referred to in this contract do not purport to authorize defendant's Chief Engineer to pass upon all decisive questions of law by determining whether defendant's own alleged wrongful or negligent conduct improperly prevented the contractor from fulfilling his contract on time and deciding the effect thereof, under such circumstances, on defendant's right to retain liquidated damages, out of amounts conceded to be otherwise due plaintiff under the contract for the work done. [See King Iron Bridge & Mfg. Co. v. City of St. Louis, 43 Fed. 768; Bates & Rogers Const. Co. v. Board of Commissioners, 274 Fed. 659; Robert Grace Const. Co. v. Chesapeake & Ohio Northern Ry. Co., 281 Fed. 904; Parke v. Pence Springs Co. (W. Va.), 118 S. E. 508; Hannan, Hickey Bros. Const. Co. v. Chicago, B. & Q. R. Co. (Mo. App.), 247 S. W. 436; Scott v. Parkview Realty & Improvement Co., 241 Mo. 112, 145 S. W. 48; Annotation 54 A. L. R. 1265.] We hold that defendant was not entitled to have its demurrer to the evidence sustained as to Count I on these grounds urged.

This leaves plaintiff's assignments as to instructions and rulings on evidence to be decided as they relate only to his right to recover under Count I. Since defendant does not contend that plaintiff did not make a jury case on Count I, it is not necessary to set out the evidence in detail; but only such specific facts, which the evidence tended to prove concerning delays, as will make clear the issues to be covered by instructions. Plaintiff claimed delays caused by fault of defendant which prevented the completion of the viaduct for traffic within the specified time, as follows:

1.—Defendant failed to promptly determine and furnish to plaintiff the grade line to which the new completed structure was to be built and the levels of the various parts thereof necessary for making shop drawings required for fabrication of new ▮ steel parts to be used in the reconstruction of the steel work of the viaduct to the grade to be fixed.

2.—Defendant failed to pass on such shop drawings when they were prepared but sent them to a private firm of consulting engineers, and this firm unreasonably delayed in approving these shop drawings so that plaintiff was delayed in having the steel fabricated for the framework of the viaduct.

3.—Defendant failed on many occasions to have an inspector on hand to inspect the steel after it was fabricated so that delivery thereof was delayed and plaintiff was prevented from continuously working on rebuilding the steel work of the viaduct.

4.—Defendant unreasonably refused to approve welders who qualified under tests given and arbitrarily required qualification by other tests not specified, which delayed the progress of the work.

5.—Defendant condemned certain beams plaintiff was to use under the plans, but unreasonably delayed in deciding whether to use them so that plaintiff was caused delay in obtaining new beams to replace them.

6.—Defendant made several changes in grade, elevation and design of various parts of the structure which delayed plaintiff in fabrication of steel required for the structure and prevented plaintiff from continuously carrying on the work of reconstruction.

Plaintiff's contract was executed February 29, 1936. It provided that plaintiff was to commence work within 15 days after notice to proceed. Notice which was given in the latter part of March (after he already had commenced work) required him to begin work on or before April 5. The contract provided for reconstruction of the Inter-City viaduct, between Kansas City, Missouri, and Kansas City, Kansas, which was the route of U. S. Highway No. 40. (The Missouri part was 4286 feet, and plaintiff also had another contract for the part in Kansas, made with the Kansas Highway Commission.) The old concrete roadway was to be demolished. Some of the old steel framework was to be removed and replaced with new steel and a new concrete pavement laid. The contract set August 15, 1936, as the date for sufficient completion for opening to traffic and required final completion by October 1, 1936. It provided for liquidated damages at the rate of $500 per day for failure to open for traffic within the time specified. The viaduct was open for traffic on November 4, 1936, and the entire contract fulfilled on January 25, 1937. It is conceded that the contract was fully performed; that there was no disagreement as to the amount due plaintiff for the work done; and that the only dispute was the right of defendant to withhold, from the amount due plaintiff under the contract, the amounts claimed for liquidated damages.

Although the contract was let by the State Highway Commission, the money was all furnished by the United States government and the plans were prepared by the firm of consulting engineers employed by the City of Kansas City, which had built the original viaduct.

This old structure had settled so that some of the steel framework was tilted and out of position. No bench mark appeared on the plans and it was necessary to have a grade established to which the new structure should be built. To fix this grade, it was necessary for defendant's engineers to determine with their surveying instruments how much the various parts of the old steel work had sunk below the elevation to which it was originally constructed. This was necessary in order to make the new steel fit so as to bring the new structure up to a level upon which the pavement could be furnished on an intended smooth grade line. Plaintiff commenced the work of demolishing the old slab on March 13th and by April 3rd had demolished more than 1000 feet or about one-fourth of it. It was all removed by June 2nd. Plaintiff claimed that the grade line could have been established from the ground by the inverted rod method before the pavement was removed. Defendant claimed that it was only possible to do this accurately by surveying over the top of the structure after removal of the pavement. The evidence was that defendant's engineer did some of the surveying on April 3rd and 4th and then did not begin again until April 18th; that the first information furnished plaintiff as to the level on any part of the structure was on April 9th; that this determination of levels of various parts thereafter was delayed long after the pavement was removed from such parts; and that final information was not furnished until June 6th.

It was necessary to have the elevations in order to make the drawings for shims (metal plates of different sizes used to bring the steel work to the proper elevation) which were the first materials it was necessary to ▮ have on the ground to begin the reconstruction of the steel work of the viaduct. Shop drawings had to be prepared for these shims and for all other steel work to be fabricated. Plaintiff sublet a contract to the Builders Steel Company for preparing all shop drawings. The first sheets of these drawings were submitted to the Highway Department which did not pass on them but forwarded them to the consulting engineers employed by Kansas City. There was evidence that there was a misunderstanding between defendant and the consulting engineers about this matter; that defendant understood it was to pass on the drawings but the consulting engineers insisted on passing on them; and that "there was quite a little delay at the start before a system was worked out;" so that it took "at least three weeks to get the first shop drawings approved, when normally four or five days ought to have been enough." Plaintiff's evidence also tended to show considerable delay in passing upon these shop drawings throughout the whole period and some of the first ones were held up until the elevations of the new grade could be furnished to the consulting engineers. This delayed the fabrication of the steel work which was being done by Ryerson & Sons of Chicago.

It was also required that defendant's inspector should inspect all steel at the Ryerson plant and approve it before it could be used by plaintiff. Plaintiff's evidence showed that defendant had only one inspector during this period; that he was inspecting steel on other projects in plants in cities other than Chicago; that because of this there was considerable delay in obtaining inspecting of the steel for plaintiff's work; and that this delayed several shipments. Finally plaintiff was allowed to have steel shipped without inspection at the Ryerson plant, with the requirement that it be inspected in Kansas City before it was used. Further delay in fabricating the steel was shown by plaintiff's evidence in qualifying of welders at the Ryerson plant. There was evidence that defendant's inspector authorized a certain type of test and that after these tests had been satisfactorily made May 26th to May 28th, they were sent to the State Highway Department at Jefferson City. On June 1st the inspector stated that the tests were not satisfactory and that a different test would be required. The new tests were submitted on June 3rd and were not approved until June 7th. There were also two separate tests required in Kansas City, under similar circumstances, of the welders on the subcontractor's steel erection crew. It was shown that the equipment for this erection crew was shipped from Chicago on April 30th, but this crew was not able to commence erecting steel until June 8th, because of failure of material to arrive. It was further shown that the delay in getting the erection work started and in thereafter keeping it continuously under way also caused delay in building forms for the new pavement and in pouring the concrete.

There was evidence to show further delay after some of the beams on the east end of the old structure, encased in concrete, were uncovered and found to have deteriorated. These beams were finally condemned and plaintiff was required to replace them. Plaintiff's evidence showed that there was a delay of from eight to ten days after these beams were uncovered before defendant determined what to do about them. There was also a change in the plans, for an approach at the Helmers Manufacturing Company near the east end of the viaduct. Plaintiff showed that he did not get final approval of the shop drawings for this change until July 22nd. Other drawings were approved as late as July 13th to 18th. Plaintiff's evidence further showed that there was some discussion about changing the design of this approach as early as March; that a new design was not due to anything discovered in the field; and that it could have been made at that time. After submitting shop drawings on the basis of the original plan, plaintiff was notified on May 25th to stop work there and was not furnished the new design until June 18th. Because of this delay in making the change, plaintiff's evidence showed that he could not get the fabricated steel for this part of the viaduct on the ground in time to construct that part of it when the steel erection crew was

at that place so that they were required to go on beyond it and come back to complete it later. Plaintiff's evidence tended to show that it required longer to do this work, under these circumstances (moving around it and coming back), than if it could have been done when the crew had the machinery at this place ready to do this work in the regular order. There were also other changes in the original plans shown at some other places, and including other approaches. Defendant had evidence to contradict much of these claims, or to show that plaintiff or his subcontractors were to blame for the failure to complete the work on time, and to show that many of the matters complained of caused no actual loss of time to plaintiff.

Defendant's instructions criticised by plaintiff were as follows:

"I. The court instructs the jury that if you find and believe from the evidence that the failure of plaintiff to complete the work, contemplated in the contract within the time fixed by the contract, was occasioned solely by plaintiff's failure, if any, to secure qualified workmen to carry on said work, then your verdict must be for the defendant on Counts I and II."

"K. The Court instructs the jury that the written contract between this plaintiff and the defendant provided that the contractor shall be responsible for the accuracy of all dimensions and elevations and he shall bear the cost of all extra work in construction caused by errors in measurements or in detailing the shop drawings or in fabrication.

"In that connection you are further instructed that there was no obligation under the contract upon the defendant State Highway Commission of Missouri, its agents or employees, to furnish the plaintiff, his subcontractors or agents, with such dimensions and elevations; and you are further instructed that your verdict cannot be for the plaintiff upon Counts I and II, or either of them, for any or all of the days which you may find from the evidence the plaintiff was delayed in the prosecution of his work by reason of his failure to secure such dimensions and elevations.

"L. You are instructed that the law required a written contract for the construction of the viaduct in question be awarded to the lowest responsible bidder and only after all bidders had been granted an opportunity to bid for doing the work under plans, contract and specifications which would be the same for all bidders.

"You are further instructed that the written contract introduced in evidence and the other documents executed in pursuance thereof, authorized therein and introduced in evidence in this case, constitute the sole and only agreement between the parties. Therefore, if you find and believe from the evidence that the defendant Highway Commission carried out its obligations under said agreement and paid all money provided in said contract according to the tenor thereof, then your verdict must be for the defendant upon Counts I and II."

224

Concerning Instruction I, plaintiff says that there was no evidence on which to base it. We think plaintiff's objection must be sustained. We can find no evidence in the record that plaintiff's workmen, or any of them, were not qualified. It is conceded that the work was satisfactorily completed according to the plans and specifications so that the workmen who did it must have been qualified. Defendant points to the delays connected with qualifications of welders. However, even defendant's evidence shows that welders were qualified under the highest required test although plaintiff had claimed the first test was sufficient. Moreover, part of this trouble (and delay therefrom) seems to have been in obtaining the material for the higher test and making arrangements for the laboratory facilities required. Defendant also says that the same erection crew (for the steel work) was used on both the Missouri and Kansas Side of the project and would move back and forth during the progress of the work. This does not show that the crew was not composed of qualified workmen and the instruction does not require a finding as to the sufficiency of the number of qualified workmen employed. Furthermore, the evidence did not show that the crew was not large enough to handle the steel as fast as it was fabricated and delivered and part of plaintiff's complaint was that defendant caused the delay in obtaining steel and that it was not, for that reason, delivered as fast as plaintiff was prepared to handle it. Defendant had no evidence to show that more men were required to do so, under the circumstances. Of course, it is elemental that there must be substantial evidence to support every decisive issue submitted. We hold that the record herein does not meet this test as to the issue that failure to complete the work was occasioned solely by plaintiff's failure to secure qualified workmen, and that Instruction I was, therefore, erroneous and prejudicial.

Plaintiff says that Instruction K erroneously authorized the apportionment of liquidated damages. We think the concluding clause of this instruction is susceptible of this construction. The general rule is that, except under unusual circumstances or definite contractual provisions, there can be no apportionment of liquidated damages (or recovery of any part thereof by a party ▇ at fault for substantial delay) even when the parties are mutually responsible for delays preventing completion on time. [9 Am. Jur. 37, sec. 50; 15 Am. Jur. 696, sec. 262; Annotation 17 Ann. Cas. 646; 25 C. J. S. 696, sec. 115; Beattie Mfg. Co. v. Heinz, 120 Mo. App. 465, 97 S. W. 188; Sneed & Co. Iron Works v. Merchants' L. & T. Co. (Ill.), 80 N. E. 237, 9 L. R. A. (N. S.) 1007; Wallis v. Wenham (Mass.), 90 N. E. 396, 17 Ann. Cas. 644; Board of Education v. Chaussee (Mich.), 177 N. W. 975; Mosler Safe Co. v. Maiden Lane Safe Dep. Co. (N. Y.), 93 N. E. 81, 37 L. R. A. (N. S.) 363; Smith v. City of Tahlequah (Okla.), 245 Pac. 994; Bauman v. Peters (Minn.), 231 N. W. 613; United States v. United Engineering & Constracting Co.,

234 U. S. 236, 34 Sup. Ct. 843, 58 L. Ed. 1294; see also H. E. Crook Co. v. United States, 270 U. S. 4, 46 Sup. Ct. 184, 70 L. Ed. 438; for a case authorizing apportionment see Bedford-Carthage Stone Co. v. Ramey (Tex.), 34 S. W. (2d) 387.] In this connection, however, we do not mean to approve plaintiff's submission in the alternative of each of the various elements of defendant's conduct entering into the cause of the delay because some of them at least (for example delay in inspection and delay in qualifying welders) do not seem to have caused sufficient delay to be alone the substantial cause of plaintiff's failure to complete the viaduct on time although the combined effect of several of them could be. It also seems reasonable to believe that the provision of the contract, referred to in the first part of Instruction K, did not cover the furnishing to plaintiff of the grade line to which the new structure was required to be built, but, on the contrary, referred only to the dimensions and elevations of the old structure. (This provision was headed: "*Details of the Existing Viaduct.*") This must be true in view of the contract as a whole and the following specific provision: "E-7. Unauthorized Work. Work done without lines and grades being given or work done beyond the lines and grades shown on the plans *or as given*, except as otherwise provided in the contract, will be considered unauthorized and done at the expense of the Contractor." Defendant's own evidence was that the plans did not show the new grade, or any bench mark from which it could be determined, but that it was the duty of its project engineer to establish a bench mark and base thereon the grade to which the new structure was to be built. (Defendant's project engineer said: "There must be a bench mark.") Certainly plaintiff could not build the new structure to a required grade line unless he was informed what it was. Therefore, this instruction was particularly misleading as to the construction of the contract and the issues to be decided. It might well be understood to eliminate from consideration the alleged delays in furnishing plaintiff the grade to which he was required to rebuild the viaduct. We hold that it was erroneous and prejudicial.

As to Instruction L, it is obvious that, as plaintiff claims, the last sentence submits to the jury a pure question of law, namely: The entire matter of the construction of the contract and its application to the evidence. It not only erroneously submits a legal question but does so in the broadest abstract way so as to give the jury a roving commission to find a verdict without being limited to any issues of fact or law developed in the case. [See City Trust Co. v. Crockett, 309 Mo. 683, 274 S. W. 802, l. c. 811; City of Weston ex rel. Maley & Kelly Contracting Co. v. Chastain (Mo. App.), 234 S. W. 350; Phelps Stone & Supply Co. v. Norton, 227 Mo. App. 268, 52 S. W. (2d) 413; Thompson v. St. Joseph Ry., L., H. & P. Co., 345 Mo. 31, 131 S. W. (2d) 574.] We recently stated the following reasons why instructions, authorizing verdicts upon abstract legal propositions, are

erroneous: "This is because jurors are not learned in the law, and it is the function of a jury to decide fact issues; they should not be asked to pass upon questions of law. A jury can only understand how to reach a correct general verdict by being told what facts must be found to reach each possible result under the evidence." [Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853; see also Stanich v. Western Union Telegraph Co., 348 Mo. 188, 153 S. W. (2d) 54, decided May Term, 1941.] Furthermore, the first two sentences of Instruction L relate to matters not in any way issues in this case, in an abstract way which might confuse the jury, and should be omitted. We hold that the abstract general submission in Instruction L was erroneous and prejudicial.

 The matters complained of in admission of evidence are not likely to occur again on retrial. Nevertheless, we deem it advisable to point out that both parties improperly offered and were permitted to put in evidence statements of ██ State and Federal engineers (which were their own opinions or conclusions) as to what the United States government would or would not do at some future time concerning the controversy under certain contingencies. It was likewise improper for defendant to inject matters connected with other contracts between it and plaintiff, and for defendant's inspector to relate statements made by the steel manufacturers' agents who were not employees or agents of plaintiff. (Admissible perhaps for impeachment after proper foundation.) Whether or not such matters should have been held prejudicial if there had been a proper submission, we do not now rule. However, we do not think plaintiff has shown any reasonable grounds to question the admissibility of defendant's Exhibit 5, a chart made from the records of the consulting engineers, showing when shop drawings were received and when they were approved. Plaintiff introduced similar charts as to what its records showed as to these and other matters in controversy.

The judgment is reversed and the cause remanded as to Count I, and affirmed as to dismissal of Counts II and III.

*Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All concur.