SIMPSON BROS. CORPORATION v. JOHN R. WHITE & SON, Inc.

(Circuit Court, D. Rhode Island. January 16, 1911.)

Law No. 2,917.

1. CONTRACTS (§ 234*)—CONSTRUCTION—BUILDING CONTRACT.

Under a contract for the building of a reinforced concrete structure, providing that the contractor should "provide all the materials and perform all the work for the * * * building of the concrete work," and that, "if more or less concrete is required in foundations, it shall be added to or deducted from the contract price at a unit price of $6 per cubic yard," where by a change in plans less concrete work was required in the foundation, the owner was not entitled to a deduction of $6 per yard for the concrete and a further deduction for the saving in steel; but the word "concrete," as used in such provision, is to be construed as meaning reinforced concrete, including the necessary steel therein, in the absence of evidence showing that the sum stipulated is so variant from the actual cost that such construction could not have been within the intention of the parties.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 234.*]

2. CONTRACTS (§ 196*)—CONSTRUCTION—BUILDING CONTRACT.

Under a building contract requiring the work to be done under the direction of an architect, to be paid by the owner and having authority to condemn any part of the work and to require its replacement by the contractor, there is no ground for charging the contractor with the services of an inspector employed to see that the work conforms to the plans and specifications.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 196.*]

3. CONTRACTS (§ 300*) — CONSTRUCTION OF BUILDING CONTRACT — DELAY IN COMPLETION—"CAUSES BEYOND THE CONTROL OF THE CONTRACTOR."

Under a building contract requiring the contractor to pay the owner a stated sum per day for delay in completing the building beyond the time fixed by the contract, but further providing that the penalty should be suspended, should the work be delayed "by causes beyond the control of the contractor," such provision must be construed with regard to the circumstances and to the ordinary course of business at the time of the contract. The bare fact that materials were ordered and delayed in manufacture or transit does not show a cause beyond the control of the contractor; nor does the failure to get material from a particular man, unless it was of such peculiar character as not to be procurable elsewhere; and, even when shown that there was unavoidable delay in obtaining material, it must be further shown that the delay in completion of the building was in fact due to that cause.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1372–1381; Dec. Dig. § 300.*]

4. DAMAGES (§ 79*)—CONSTRUCTION OF STIPULATION IN CONTRACT—LIQUIDATED DAMAGES OR PENALTY.

Where the actual damages resulting from the failure to complete a building by the time fixed by the contract was not shown, a stipulation

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the payment by the contractor of a stated sum per day after such time and until completion will be treated as one for liquidated damages, and not as a penalty, and enforced.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. § 79.*]

At Law. Action by the Simpson Bros. Corporation against John R. White & Son, Incorporated. Judgment for plaintiff.

Powers & Hall, A. C. Matteson, and William J. Brown, for complainant.

Henry W. Hayes, for defendant.

BROWN, District Judge. This is an action at law, wherein the plaintiff seeks to recover a balance alleged to be due upon a contract under seal for the construction of a reinforced concrete coal pocket for the defendant, John R. White & Son, Incorporated, at Providence, R. I. The case was heard by the court; jury trial being waived.

Of the contract price, $29,000, the plaintiff has received $19,103.25, and claims the balance, $9,896.75, with an additional sum of $142.35 for extra steel, with interest. The defendant disputes the claim for extra steel, and claims the following deductions from the contract price:

The sum of $664.54, by reason of agreed changes in plan for foundation, requiring less material.

The sum of $360.70 for charges and expenses of engineer and inspector, due to imperfect work by the plaintiff.

The sum of $7,100 for delay in the completion of the work from November 30, 1906, to May 27, 1907, according to article 6 of the contract.

The defendant states the account as follows:

| | | |
|---|---|---|
| Balance of contract price | | $9,896 75 |
| Deductions | $ 664 54 | |
| | 360 70 | |
| | 7,100 00 | |
| | | 8,125 24 |
| Balance due | | $1,771 51 |

As to the plaintiff's item of $142.35 for extra steel, the testimony and exhibits show a repeated and consistent refusal of the architect to authorize this work at the expense of the owner, and that the defendant was expressly notified in writing that if changes were made they were to be at the contractor's expense. This claim is disallowed as without merit, and as precluded by article 3 of the contract.

The defendant's claims for deduction:

It is agreed that the original plans for the foundation were so modified by mutual consent as to require less material. The contract provides in article 1:

"If more or less concrete is required in foundations, it shall be added to or deducted from the contract price at a unit price of $6 per cu. yd."

As the parties are in substantial agreement as to the number of cubic yards, and as to their calculations differ only in cents, I find

that the defendant is entitled to a deduction of $201.84 in accordance with article 1.

The defendant also claims a further deduction for a saving in steel by changes of plan for the foundation.

The plaintiff contends that the term "concrete," in article 1, means reinforced concrete, and that the agreed sum of $6 per cubic yard includes steel, as well as mixed concrete.

The only clause in the contract bearing upon this is:

"Article 1. The contractor shall and will provide all the materials and perform all the work for the construction of coal pocket at Providence, R. I., as follows: Excavation for foundations; the building of the concrete work; the wooden roof and sides; the timber work for tracks and walks, etc."

The term "concrete work," in this clause apparently means that part of the structure which is composed of steel and mixed concrete; i. e., reinforced concrete.

The plaintiff's interpretation gives the term "concrete" the same meaning in all clauses of article 1, and provides a simple rule of compensation for additions or deductions.

By the defendant's interpretation, upon a change of the amount of reinforced concrete, the allowance is to be figured by separating the compound structure into two parts, the mixed concrete and the steel embodied in it, and multiplying the number of yards of mixed concrete by 6.

The difficulty with this interpretation is that the contract then fails to provide a measure of compensation for the additions or deductions of steel which necessarily accompany additions or deductions in reinforced concrete.

As the matter was left upon the hearing, the proofs in the case afford little aid in interpreting the contract. The specifications are not in evidence. There is no testimony tending to show why the sum of $6 per cubic yard was fixed by the contract, or that it was not an adequate allowance for reinforced concrete.

Upon the defendant's claim that the total amount of material saved by changes of plan was $664.54, it might be argued that an allowance of $201.84 was so inadequate as to show that the defendant's interpretation of the contract leads to a result so unjust that it could not have been the true intent of the parties. This argument, however, is based largely upon disputed testimony, since the plaintiff contends that the total saving of materials was, in fact, but $360.54.

Upon weighing the testimony, I am unable to find that according to a preponderance of proof the actual saving was more than $360.54. The discrepancy between this sum and the sum to be allowed according to the terms of the contract as interpreted by the plaintiff is substantial, but is hardly conclusive.

The defendant contends that as a matter of fact the changes in the foundation or mat were contemplated and agreed upon at the time of signing the contract, and that the special clause concerning allowances was inserted in special view of the proposed changes. If this is the case, it is more probable that the clause was intended to provide a measure for computing the value of all the proposed changes, rather than of a part.

While the question is not free from doubt, I find that the contract provides a rate of compensation for all additions and deductions in the amount of reinforced concrete at $6 per cubic yard, and that a proper mode of fixing this is to find the difference between the number of cubic yards of reinforced concrete in the amended plans and in the original plans, and to multiply this by 6.

The defendant's claim of $664.54 is disallowed, except as to the amount of $201.84.

The item of $360.70, claimed by the defendant for expenses of inspector and of engineer in superintending repairs required by imperfect work, must be disallowed. Article 2 provides that the work is to be done under the direction of the architect, and that all charges for the services of the architect are to be paid by the owner.

Article 4 gives to the architect authority to condemn materials, worked or unworked, and provides that the contractor shall take down all portions of work condemned by the architect as unsound or failing to conform to drawings and specifications, and shall make good all work damaged or destroyed thereby. The contractor's obligation is discharged when he makes good the work condemned, and I know of no principle, legal or equitable, which justifies the charge for an inspector to follow the work merely to see if the contractor is fulfilling his agreement. The condemnation of imperfect work is a part of the contemplated service of the architect, which the contract provides shall be paid by the owner.

The deduction of $7,100 for delay is based upon article 6:

"Art. 6. The contractors shall complete the several portions and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to wit:

"The pocket shall, in the opinion of the engineer, Adolph Suck, be completed on Friday, November 30, 1906: it being understood that for a period of two weeks after the time of said completion, coal shall not be put into it in excess of one-half of its full capacity. The term 'completed' is to be construed to mean in condition to put coal in and take coal out of it in proper condition.

"For each and every working day prior to the date named that it is completed as described above, said John R. White & Son, Incorporated, agrees to pay to said Simpson Bros. Corporation at the rate of $100 per week; and for each day that its completion is delayed beyond the date named the contractor shall pay the owners at the rate of $100 per week, and on and after Friday, December 14, 1906, at the rate of $300 per week until it is completed as described above."

It is conceded by both parties that the coal pocket was not completed, in the sense of that term as defined in the contract, at the agreed date, November 30, 1906. There is a direct conflict as to the date of such completion. The plaintiff contends that the pocket was so completed on January 29, 1907. The defendant admits, for the purposes of the case, that the building was completed on May 27, 1907.

The provision:

"The pocket shall, in the opinion of the engineer, Adolph Suck, be completed on Friday, November 30, 1906"

—while peculiar in expression, seems clear in meaning, and to give the architect or engineer, Adolph Suck, the power to pass upon this question of completion.

The plaintiff has failed to show the acceptance by the architect of the work as completed to the extent provided for in article 6 at any date prior to May 27, 1907. At the trial Mr. Suck, the architect, testified that in his opinion the pocket was not completed in conformity with article 6, and was not in a condition to receive coal, before May 27, 1907. He further testified, in relation to plaintiff's claim that the pocket was completed January 29, 1907, that concrete was poured by the contractor two weeks before that date, in winter weather.

The plaintiff produced as a witness Mr. Joseph R. Worcester, who testified that upon an examination of the pocket on March 12, 1907, he found the concrete sufficiently strong, and that as the average temperature was below freezing from January 29, 1907, to the date of his examination in March, he concluded that the concrete must have set before January 29th.

Mr. L. B. Murray testified that at a late date in April, 1907, in presence of Mr. Simpson and Mr. Kinghorn of defendant corporation, he asked Mr. Worcester if he would dare to load the pocket, and that Mr. Worcester replied he would not.

Mr. Sumner P. Annis, superintendent for the contractor, testified that the pocket was in condition to receive coal on January 29, 1907, though upon cross-examination he made admissions as to the frozen condition of concrete and the retention of forms, which indicate that his opinion was affected by bias, and was hardly impartial.

The plaintiff's brief contends that the architect's decision is not binding because of bad faith; but the evidence contains nothing to substantiate this contention or to impeach his testimony while on the stand in the trial.

I therefore find that the date of completion, according to article 6, was May 27, 1907.

The burden rests upon the plaintiff to show legal excuse for the delay. The contract contains the following provisions as to delay:

"Art. 7. Should the contractors be delayed in the prosecution or completion of the work by the act, neglect, or default of the owners, or the architect, or of any other contractors employed by the owners upon the work, or by any damage caused by fire or other casualty for which the contractors are not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on the part of the contractors, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid, which extended period shall be determined and fixed by the architect; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within 48 hours of the occurrence of such delay."

No extension of time was sought for by the plaintiff or allowed by the architect under this clause. This disposes of any claim for delay due to change of plans.

I am also of the opinion that the plaintiff's evidence fails to show that there was in fact any delay due to a change of plans of either foundation or superstructure. The plaintiff, therefore, in order to excuse delay, must rely upon the typewritten clause inserted after article 9, and entitled "Article 7, Continued":

"Should the work be delayed prior to December 1, 1906, by causes beyond the control of the contractor, so that the date of completion is carried into

the winter weather, and it is not practical to continue the work until spring, then the penalty provided for noncompletion shall be suspended, and the amount payable shall be determined by the engineer or by the board of arbitration, as provided in article 12."

The plaintiff alleges the following causes of delay:

(1) Changes in plans by the owner as to the construction of the mat, so called.

(2) Changes in plans in the superstructure under a subsequent verbal agreement.

(3) Delays in the shipment of steel by the manufacturer.

(4) Delays by the carrier in transporting steel.

Whatever meaning may be given to the words "causes beyond the control of the contractor," they cannot cover the changes of plan assented to by the contractor without a request for an extension. Furthermore, there is no testimony that shows that these changes of plan did carry the date for completion into winter weather. The first and second assigned causes of delay, therefore, cannot avail the plaintiff under article 7, continued.

We have, then, to consider whether the delay by the manufacturer in shipping and delay by the carrier in transporting steel are within the clause "causes beyond the control of the contractor," and, if so, whether there is proof of actual delay due to these causes.

Counsel inform me that they have been unable to find a judicial interpretation of the clause "causes beyond the control of the contractor." In interpreting a clause of this character in a construction contract like that before us, due regard must be had to circumstances and to the ordinary course of business in contemplation of the parties at the time of the execution of the contract.

The bare fact that materials were ordered, and delayed in manufacture or transit, does not show a cause beyond the contractor's control.

By stipulation it appears that a car containing steel consigned to the plaintiff was offered at Franklin, Pa., on October 5, 1906, and accepted for transportation by the Erie Railroad; that the car left Franklin October 11, 1906, and arrived at South Providence, R. I., November 11, 1906. Testimony was produced that the ordinary period of transportation was approximately a week. Mr. Winchell, plaintiff's superintendent, testifies:

"We purchased what steel we could in open market to carry the work along, because our steel was delayed in the shipping—in transit."

He testified, also, that there was delay in transit because of a breakdown on the Poughkeepsie Bridge.

The plaintiff's testimony on this point is vague and meager. It fails to disclose the quantity of steel delayed in transit, the kind of steel, the part of the structure for which the steel was required, the condition of the structure before the arrival of the steel, the ability or inability of the contractor to procure elsewhere such steel as was needed from time to time in the course of construction, or any other circumstances which would warrant a finding that the contractor, in the exercise of ordinary diligence, could not have carried on the work

regardless of this delay in the arrival of an undefined and undescribed amount of steel.

The mere failure to get material from one materialman cannot be regarded as a cause of delay beyond the control of the contractor, unless the material be proved to be of such peculiar character that it is not otherwise procurable. The failure of a business arrangement made between the contractor and those who supply him with materials, or the failure of prompt delivery of materials ordered from a distance by carrier, is an ordinary business contingency to be provided for by the contractor, and the risk of delay from causes of this character cannot be thrown upon the owner under a clause of this kind by evidence of the mere occurrence of the fact, without additional evidence showing that the contractor was practically limited to a definite source of supply, and that he could not be expected under the requirement of reasonable diligence to procure his material elsewhere. A mere statement by a contractor that he was delayed by various causes such as those stated, without a specification and without a definite showing of the connection between the nonarrival of materials and the progress of the particular work in hand, amounts to little more than a mere apology, and is not an excuse.

The plaintiff has, in my opinion, failed to show that the nonarrival of this particular lot of steel was in fact the actual cause for carrying the date of completion into winter weather, or for any delay in the work. Even if we should assume that it was the actual cause, we would still be unable to find, from any testimony in this case, that it was a reasonable cause, or a cause beyond the control of the contractor, or to determine how much delay was attributable to this particular cause. As the steel for the mat or foundation, was ordered from Holyoke, and not from Franklin, there is apparently no connection between any delays in the earlier stages of the work and the nonarrival of this particular car.

I do not lose sight of the testimony of Mr. Annis as to the possibility of having completed the work by November 30th if the steel which arrived November 1st had arrived within the first 10 days of October. The plaintiff's brief gives undue weight to this witness' answer. The witness testified in terms merely as to the possibility of doing the work. The testimony as given orally meant little more than a statement that there was a possibility of doing the work, had the steel arrived, and that later it would have been impossible to do the same amount of work in the same time. But testimony of this kind is altogether too weak to give the plaintiff the benefit of "article 7, continued." It is a mere opinion as to what was possible. Without a showing of the actual state of the work, of the actual need for the steel at a particular time, and of an actual delay traceable to this particular cause, testimony of this kind is too attenuated to prove the fact that the nonarrival of this particular car of steel made it necessary to delay the work until winter weather. The entire case of the plaintiff as to excuse for delays is weak, artificial, and unconvincing. I am of the opinion that the plaintiff has failed to excuse delay in such manner as to bring himself within the protection of "article 7, continued."

The plaintiff also contends that the provisions of article 6, for payment for delay at the rate of $300 per week must be regarded as imposing a penalty, for the reason that the rate is too large to be considered as measuring any damage likely to accrue to the defendant from delay. But this cannot be determined from the face of the document itself, and there is no testimony which enables the court to find the amount of damages anticipated by the parties as likely to result from delay or the amount of damages actually suffered by the defendant.

Under the rules stated in Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, the plaintiff must be held to its agreement. See, also, Van Buren v. Digges, 11 How. 461–476, 13 L. Ed. 771; Clark v. Barnard, 108 U. S. 436–454–455, 2 Sup. Ct. 878, 27 L. Ed. 780; United States v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731.

The plaintiff is entitled to judgment:

```
For the balance of the contract price............................ $9,896 75
Less deductions, under article 1....................... $ 201 84
               Under article 6...................... 7,100 00
                                                    ————   7,301 84
                                                           ————————
    Leaving a balance due of................................ $2,594 91
```

—with interest from the date of final acceptance of the completed building.

Should either party desire more specific or further findings, written requests therefor may be presented within 20 days from the date of this opinion.

Judgment for the plaintiff will be entered accordingly.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes