**SOUTHWEST ENGINEERING COMPANY,**
**a corporation, Plaintiff-Respondent,**

v.

**REORGANIZED SCHOOL DISTRICT R–9,**
**LAWRENCE COUNTY, MARIONVILLE,**
**Missouri, Defendant-Appellant,**

**A. J. Industries, Inc., a corporation, d/b/a**
**Reynolds Mfg. Co., Defendant-Respondent,**

and

**Fenestra, Incorporated, a corporation,**
**Defendant-Respondent.**

No. 8690.

Springfield Court of Appeals.

Missouri.

Oct. 25, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 2, 1968.

Application to Transfer Denied
Jan. 13, 1969.

744

J. Hal Moore, Moore & Pettit, Aurora, for defendant-appellant.

Horace S. Haseltine, Carl E. Yates, Lincoln, Haseltine, Forehand & Springer, Springfield, for plaintiff-respondent.

HOGAN, Presiding Judge.

This is an action for the balance due on a building contract. On April 19, 1961, the plaintiff and the defendant School District entered into a contract in which the plaintiff agreed to construct an elementary school building in Marionville for the price of $133,989.00. The building was to be completed on November 15, 1961, but the plaintiff contractor encountered various delays and it was not substantially completed until February 8, 1962. The contract contained a provision that if the building was not completed by November 15, 1961, the School District would deduct from the amount otherwise due the plaintiff the sum of $50.00 per day for each calendar day's delay in completion of the work. When the School District finally "accepted" the building on April 12, 1962, it withheld the sum of $7,347.40, according to the plaintiff, and this suit was brought to recover that sum. Originally, the plaintiff joined one of its sup-

pliers and one of the subcontractors as defendants, but the issues between the plaintiff and those defendants have been disposed of and are not before us on this appeal. The trial court found, among other things, that there was an actual delay of 84 days in completing the construction; that 75 days were excusable but that the School District was entitled to liquidated damages for nine days, and to $132.20 for water furnished the plaintiff while the building was being constructed. Judgment was entered accordingly for the plaintiff, and the defendant School District has appealed. Much testimony and innumerable exhibits were introduced upon the trial, but in the interest of a reasonably brief opinion, we will confine ourselves to a recitation of those facts and consideration of those issues essential to a proper determination of the appeal. See Bloomfield Reorganized School Dist. No. R–14 v. Stites, Mo., 336 S.W.2d 95, 97; Logsdon v. Duncan, Mo.. 293 S.W.2d 944, 946 [1].

The appellant has made a number of points addressed to the question of delay and liquidated damages, the first of which is that the plaintiff made no timely request for an extension of time, and therefore cannot claim it.

The plans and specifications for this building called for "the two long [exterior] walls" (about 160 feet long) of the classroom section to be constructed of steel encased windows, or, as they were consistently called, "window walls." These window walls were to be fabricated either by or at the direction of a concern aptly named Fenestra, Inc. There was a dispute concerning the date the window walls were ordered, but the supplier's correspondence showed that plaintiff made a positive written order on May 8, 1961, and the order was transmitted to Fenestra on May 10. Fenestra "scheduled" shipment on September 1 and September 11, 1961. Various delays occurred, and despite the efforts of the supplier, the architect and the plaintiff to obtain delivery, the window walls did not begin arriving at Marionville until November 1, and the shipment was not completed until November 10. On November 1, 1961, the plaintiff communicated by letter with the architect, stating that "we wish to herewith register our request for an extension of time as necessary beyond the original completion date," and advising the architect (as he had already been orally informed) of Fenestra's delay in shipping the window walls.

Considering both the printed "Uniform Contract" which the parties signed and the annexed specifications as one document, Kennedy v. Bowling, 319 Mo. 401, 413, 4 S.W.2d 438, 443 [4], the contract contains two provisions dealing with the contractor's delay and extension of time. Article VII of the contract proper provides that the time for completion may be extended for specified causes, if "a claim therefor is presented in writing to the Architect or Superintendent within forty-eight hours of the occurrence of the delay." The "General Conditions" of the specifications also provide for an extension of time, again for specified causes, but provide that "no such extension shall be made for delay occurring more than ten (10) days before claim therefore [sic] is made in writing to the Architect. In case of continuing cause of delay, only one claim is necessary."

Various rather technical points are urged in connection with these two contract provisions, but for our purposes it is unnecessary to set down and compare the two paragraphs word for word. No doubt as a general rule the provisions of the contract proper control the specifications in case of repugnance or conflict, Boteler v. Roy, 40 Mo.App. 234, 240 [4]; 17A C.J.S. Contracts § 327(2), p. 267, but here the two provisions dealing with delay and extension of time conflict only in one respect—the time limit on claims for delay —and to the extent possible they must be harmonized and construed together. Bloomfield Reorganized School Dist. No. R–14 v. Stites, supra, 336 S.W.2d at 100; 17A C.J.S. Contracts § 309, pp. 163–164.

It is likely that the duplication of provisions concerning delay and extension of time was inadvertent; the net result was, with the exception noted, that some of the language of the contract proper was repeated and expanded in the specifications. The two provisions are redundant; they are not irreconcilably in conflict, and when they are construed together they excuse delay in completion of the work if it is caused by unusual delay in transportation, unavoidable casualties or "any causes beyond the Contractor's control," provided a written claim for extension is made within 48 hours of the occurrence of the delay.

 We cannot agree that no timely request for an extension of time was made. It is our view that Article VII of the contract proper, which controlled, allowed the plaintiff 48 hours after the end of the period of delay in which to present its claim. J. G. Wagner Co. v. Cawker, 112 Wis. 532, 88 N.W. 599, 602. Since the specifications provided that only one claim need be made in case of "continuing" delay, plaintiff could have complied by requesting an extension after the window walls failed to arrive on September 11, but thereafter no firm delivery date was promised, and the delay in shipment did not finally end until November 1. Plaintiff thereupon communicated with the architect and that was sufficient. It may be, as the defendant argues, that the written request was defective in detail, but it was timely and it served the elementary purpose of the contract provision; it advised the defendant of the cause for delay and gave notice of plaintiff's intention to insist upon the late delivery of materials as a reason for prolonging the completion date. In the context and circumstances of this case, it was sufficient.

It is further contended that the delay was not the result of any cause specified in the contract provisions, but the appellant does not question the excusability of the delay if it was caused by Fenestra's failure to deliver the window walls, and hence it is unnecessary to consider whether the manufacturer's failure to deliver the particular materials specified was an excusable delay in the absence of a special contractual provision, Simpson Bros. Corporation v. John R. White & Son, C.C., 187 F. 418, 424 [3]; Anno., 152 A.L.R. 1349, 1391–1392 (1944); 17A C.J.S. Contracts § 505 (2), pp. 800–801, and we need not pursue the meaning of the phrase "causes beyond the Contractor's control." See Carolina Spruce Co. v. Black Mountain R. Co., 139 Tenn. 137, 201 S.W. 154, 156. The appellant's claim in this respect is that the delay was caused by the plaintiff's failure to have a large enough crew of workmen on the job to complete it on time, and not by the late delivery of materials.

This point is not without substance. Mr. Amspacher, the architect, testified that during the month of October 1961 complaint was made by the defendant concerning the progress of the job, and Mr. Williams, the plaintiff's foreman at Marionville, said he was not given sufficient personnel to get the job done "as quickly as he would like to." Mr. Amspacher also had the opinion that with a large crew of workmen, the job could probably have been finished within a month after the last shipment of window walls arrived, and he testified, in effect, that a good deal of the work which was postponed until the window walls arrived could actually have been completed earlier. A Mr. Wiley, the Superintendent of Schools at Marionville, testified that plaintiff's foreman had complained to him about the shortage of manpower, and Mr. Smart, the School District's secretary, testified similarly. The defendant further subpoenaed the plaintiff's time cards and introduced them in evidence. Counsel claim, with some justification, that these cards show the plaintiff put considerably less effort into the completion of the building after the window walls arrived than it did before they arrived. The defendant also points to various inaccuracies and inconsistencies in the plaintiff's proof that its progress was delayed by rain, and argues that plaintiff's evidence that the delay in completion of the building was caused by

748

Fenestra's failure to ship the window walls and inclement and rainy weather is unworthy of belief. We agree that the plaintiff's proof that it was delayed by rain is weak and self-contradictory. Without detailing all the evidence, the trial court could reasonably have found that completion of the building was delayed by causes other than those designated as excusable in the contract.

There was, however, evidence that the delay was caused almost entirely by Fenestra's failure to supply the window walls on time. For example, Mr. Cloepfil testified to 14 substantial items which were unavoidably delayed because the window walls did not arrive. "As a matter of necessity," so this witness' evidence ran, "the glass has to be put in the window walls, also the panels below the glass which make up the total wall section on each side of the classrooms. Then the painting, the interior painting, the floor covering, all of the mechanical work in the classrooms * * * had to go in along these window walls after they were installed. The masonry wall partitions between the classrooms could only be partially erected * *. Practically all of the cabinet work had to wait until the window wall sections were up and the glass was in and the panels were in, because of protection from the weather, and so forth." There was other evidence of this sort, including testimony that the delivery of the window walls was made so late in the year that grading, seeding and pouring outside concrete had to be delayed or done over.

So, to reiterate, the question on this aspect of the appeal, as briefed and argued, is not whether Fenestra's failure to supply the window walls was a cause of delay "beyond the control of the Contractor," but whether the nonarrival of the window walls was in fact the actual cause for carrying the date of completion into the winter. We think the plaintiff had the burden to show that the delay was caused by the non-

arrival of the window walls, and whether or not it did so was a question of fact. Simpson Bros. Corporation v. John R. White & Son, supra, 187 F. at 424; McLaren v. Fischer, 45 App.Div. 13, 61 N.Y.S. 808. As indicated, the evidence on this question was conflicting and close, and the trial court's decision depended upon conflicting oral testimony and the credibility of witnesses. We cannot say that we are satisfied its finding should have been otherwise, and therefore we defer to its judgment. In re Petersen's Estate, Mo., 295 S.W.2d 144, 148 [3].

Another controverted issue on this appeal is whether the trial court erroneously overturned the decision of the architect concerning the matter of allowable delay. The appellant maintains that the architect's ruling was binding on the parties in the absence of fraud or gross mistake, and that no such fraud or gross mistake appears in the record. The evidence on this point is diffuse and conflicting, and we will not attempt to summarize all of it; the "ruling" or "decision" upon which the appellant relies appears in a letter dated April 27, 1962, addressed to Mr. Ray Rhodes, then president of the Board of Education. In this letter, Mr. Amspacher summarized the plaintiff's requests for delay and stated, "I would recommend that the final payment be made to the contractor, based on the final amount due as shown on the final certificate which was sent to you several weeks ago, less liquidated damages * * * which is allowing the contractor a total of 36 days as set forth above * * *." The letter concludes with the statement that "if the contractor does not feel that this is a fair settlement," further evidence in justification of the delay will be considered. The extent of the excusable delay—that is, the number of days which should be allowed—was put in issue at the trial, and the trial court found that the architect had acted arbitrarily in allowing only 36 days.

It is well settled that the parties to a building contract may confide the de-

cision of disputes, particularly those involving technical matters, to the judgment of a third person, and if the contract either expressly or by necessary implication so provides, the arbiter's decision is final and binding on the parties in the absence of fraud or gross mistake. United Const. Co. v. City of St. Louis, 334 Mo. 1006, 1023–1024, 69 S.W.2d 639, 647–648 [9]; Chapman v. Kansas City, C. & S. R. Co., 114 Mo. 542, 550, 21 S.W. 858, 859; Massman Const. Co. v. Lake Lotawana Ass'n., 240 Mo.App. 469, 477, 210 S.W.2d 398, 402 [1,2]. We will simply assume, as do the parties, that this contract entrusts the final determination of the amount of excusable delay to the architect; the contract proper provides that the time for completion may be extended for specified causes, "which extended period shall be determined and fixed by the Architect," and a similar provision appears in the annexed specifications. It is worth noting that the architect's general authority to supervise construction and decide technical disputes does not necessarily carry with it the authority to pass finally upon all matters involving the parties' conduct and the owner's right to liquidated damages, Gillioz v. State Highway Commission, 348 Mo. 211, 218–219, 153 S.W.2d 18, 22 [3, 4], but for present purposes it is unnecessary to construe the contract fully and precisely.

■ Provisions of the sort we are considering here, requiring the submission of disputes to engineers, architects or other designated persons, are subject to being waived, 17A C.J.S. Contracts § 497(4), p. 730, and the effect of such provisions must be judged in light of the parties' conduct. On November 1, when the first shipment of window walls arrived, plaintiff made a request for delay. This was amplified by a second request in writing on December 26, 1961. Whether Mr. Amspacher, the architect, acted immediately on either of these two requests is disputed. Mr. Anderson, plaintiff's president, testified that Mr. Amspacher, the architect, said on the telephone that he would allow all the delay the plaintiff claimed; Mr. Amspacher denied this. There was evidence that the defendant's members had a meeting with plaintiff's officers in March 1962, after final payment had been recommended by the architect, and at that meeting the defendant had offered to make final payment if plaintiff would agree to liquidated damages in the amount of $5,000.00. On February 8, 1962, the architect had recommended final payment to the plaintiff, "after determining the proper amount to withhold." As we understand the record, when the defendant made its last payment to the plaintiff, in "May or June" 1962, plaintiff was advised that the board was assessing liquidated damages from the completion date, November 15, 1961. The architect's testimony was that defendant did not follow his recommendation regarding final payment. Further, in answering the plaintiff's petition, the defendant contented itself with claiming that it was entitled to deduct $7,400.00 for delay, and raised no contract provision in avoidance of its liability. The defendant vigorously litigated the matter of allowable delay without any objection whatever that plaintiff was bound by the architect's decision.

■ For several reasons, we believe the defendant may not now claim that Mr. Amspacher's determination, if such it was, limits the amount of delay which plaintiff may claim. In the first place, we doubt that the architect intended his "recommendation" as a final and binding determination of the delay to be allowed. At one point, Mr. Amspacher testified that he "didn't believe" he made a recommendation to the defendant concerning liquidated damages; at another point, he testified he told the defendant "that I did not know what to recommend [concerning liquidated damages], and suggested that they hire an attorney for such advice." Mr. Amspacher's letter of April 27, 1962, which we have noted, was tentative, and it was addressed to the defendant long after Mr. Amspacher

had certified the building as being substantially complete. It seems to have been intended as a recommendation for settlement of the parties' differences, which had become pronounced by April 27. A further and stronger reason for our ruling is that the defendant seems to have ignored the architect's recommendation and the contract provisions authorizing him to fix the period of extension, until it obtained an adverse decision in the trial court. Whether the principle involved is properly called waiver, estoppel or election, the defendant cannot now invoke the protection of the contract. See Julian v. Kiefer, Mo.App., 382 S.W.2d 723, 729 [9, 10]; Summerlin v. Thompson, 31 Fla. 369, 12 So. 667, 672; Ryan v. Curlew Irrigation & Reservoir Co., 36 Utah 382, 104 P. 218, 220; Anno., supra, 152 A.L.R. at 1389–1390; 17A C.J.S. Contracts §§ 497 (4), 499(6), pp. 730, 756–757. This is not the basis on which the trial court rejected the architect's determination, but a correct conclusion in a court-tried case will not be disturbed simply because the court gave a wrong or insufficient reason therefor. Edgar v. Fitzpatrick, Mo., 377 S.W.2d 314, 318 [12].

Among other things, the trial court found that the plaintiff was entitled to 15 days' delay because the architect failed to inspect the building promptly after the plaintiff requested final approval on January 19, 1962. Here again the defendant argues that the delay cannot be allowed because no extension of time was requested in writing. Though it is technical, the point is well taken. Mr. Cloepfil testified that after Mr. Amspacher made up a "pencil" punch list on January 12, 1962, the plaintiff did the necessary work and notified Mr. Amspacher on January 19 that it had been done. Mr. Amspacher did not make the final inspection until January 29, when he made up a "final" punch list setting out 25 separate items remaining to be done. Mr. Cloepfil stated that the matters specified in the "final" punch list were completed by February 1. The architect finally approved the job on February 8. On the basis of this evidence, the trial court allowed 15 days' delay as having been caused by the failure of the architect to perform his duties promptly. No written request for extension was made with respect to this particular delay.

■ In our opinion, this finding cannot stand. Of course, prevention or hindrance of performance of a building contract within a specified time by the contractee ordinarily excuses the delay, and in the absence of a special contractual provision the contractor cannot be held liable for liquidated damages. Beattie Mfg. Co. v. Heinz, 120 Mo.App. 465, 476, 97 S.W. 188, 191 [2]; Anno., supra, 152 A.L.R. at 1350, Sect. II(a); 5 Williston, Contracts, § 789, pp. 764–766 (3rd ed. 1961). When, however, the extension of time provisions require notification in writing of the causes of delay, or application in writing for an extension of time, then giving the notice or making the application is a condition precedent to recovery by the contractor, even though the delay is caused by the owner or those for whom he is responsible. Progressive Builders v. District of Columbia, 103 U.S. App.D.C. 337, 258 F.2d 431, 433 [1], cert. denied 358 U.S. 881, 79 S.Ct. 122, 3 L.Ed.2d 111; East River Construction Corp. v. District of Columbia, D.C., 183 F.Supp. 684, 685 [1]; Ward v. Haren, 139 Mo.App. 8, 15, 119 S.W. 446, 449; Anno., supra, 152 A.L.R. at 1379–1381. We are fully conscious that this last stated rule has been criticized as giving the contractee a wholly unconscionable advantage, Peter Kiewit Sons' Co. v. Pasadena City Jr. Col. Dist., 59 Cal.2d 241, 28 Cal.Rptr. 714, 716–717, 379 P.2d 18, 20–21, and we agree that in some circumstances compliance with the written request requirements of extension of time provisions should not be strictly required when the delay is caused solely by the contractee or his agents. Nevertheless, the parties in this instance were free to contract as they chose, and the contract specifically requires the contractor to present his claim for extension of time in writing, should he "be delayed in the prosecution or completion of the work by

the act, neglect or default * * * of the Architect." Here, noncompliance with the provision requiring a written claim for extension of time on account of the architect's delay has caused one of the very consequences the provision was designed to avoid —the presentation of a stale claim for delay founded wholly on the vague and uncertain oral evidence of a single witness. There is no fact or circumstance in the record which would justify holding that the condition of notice has been eliminated by waiver or estoppel, as in United States v. John Kerns Const. Co., 8 Cir., 140 F.2d 792, 797–798, and Jobst v. Hayden Bros., 84 Neb. 735, 121 N.W. 957, 959–960 [7], 50 L.R.A.,N.S., 501, nor is this a case in which noncompliance with the notice requirement is being used by the owner to justify withholding a major part of the contract price as liquidated damages, even though he himself has caused the delay. See Peter Kiewit Sons' Co. v. Pasadena City Jr. Col. Dist., supra, 59 Cal.2d 241, 28 Cal.Rptr. at 716–717, 379 P.2d at 20–21 [3]; 5 Corbin, Contracts, pp. 411–412, n. 24 (1964). The court's finding that plaintiff was entitled to 15 days' excusable delay because of the architect's failure to inspect the building promptly cannot be sustained.

Yet another controverted issue here is whether the building was substantially complete on February 8, 1962, as the trial court found. The defendant maintains that it was not, and as with the other points it has raised and developed on this appeal, the defendant has gone into considerable detail. We consider it unnecessary, however, to review the nature and limitations of the doctrine of substantial performance as it applies to building contracts; our courts have held that a building is "substantially complete" so as to entitle the contractor to the full contract price when construction has progressed to the point that the building can be put to the use for which it was intended, even though comparatively minor items remain to be furnished or performed in order to conform to the plans and specifications of the completed building. State ex

rel. Stites v. Goodman, Mo., 351 S.W.2d 763, 766 [1]; Julian v. Kiefer, supra, 382 S.W.2d 723, 728 [6]. It is true, in the case of substantial but defective performance, that the owner is entitled to have the contractor's recovery reduced by the amount that would reasonably be required to remedy the defects and make the structure conform to the plans and specifications, Talbot-Quevereaux Const. Co. v. Tandy, Mo.App., 260 S.W.2d 314, 316 [1], but the defendant's claim that its building was not "substantially complete" on February 8, 1962, is not based on any assertion that the workmanship or materials were defective, or that there was some deviation from the specifications. There is no proof in the record that after the defendant finally decided in April 1962 that it would "accept" the building, it was necessary to repair the building or replace any of the work done. The defendant's claim in this court is that on February 8, 1962, the work had not progressed to the point that the building could be used as an elementary school. Nevertheless, the architect certified to the defendant that the building was complete and issued a final payment certificate on February 9, 1962; he addressed a letter to Mr. Wiley, Superintendent of Schools, stating that the certificate took "the extras and credits, etc." into account, excepting "the proper amount to withhold," apparently as liquidated damages for delay. There was indeed evidence indicating that the exterior walk had not been completed, that some of the painting had not been done, and that some other minor items remained to be completed after February 8; but on conflicting evidence, the question whether the building was substantially complete on that date was one of fact for the trial court, 13 Am.Jur.2d Building & Construction Contracts, § 129, p. 120, and we cannot say that its finding in this respect was clearly erroneous.

Finally, the defendant contends that interest was erroneously allowed from February 8, 1962, when it should only have been allowed from April 6, 1962, the date from which interest was prayed in the petition.

The defendant cites Cunningham v. Kinnerk, 230 Mo.App. 749, 768–769, 74 S.W.2d 1107, 1116 [18], wherein it is said that generally, when the petition claims interest from a certain date, it is error to allow it from an earlier date. This point is so abstractly made—and answered—that we cannot fairly rule on it, but there is no claim that plaintiff is not entitled to interest on any theory, and the time at which plaintiff became entitled to payment was an issue which was fully litigated without objection. While, as we say, the point is not sufficiently developed for us to rule confidently on it, we think the time from which interest ran must be regarded as an issue tried by consent, and defendant may not now complain that the relief granted was not within the scope of the issues made by the pleading. Rule 55.54, V.A.M.R.; Gooch v. Avsco, Inc., Mo., 340 S.W.2d 665, 668–669 [6]; Bowers v. Spinaio, Mo.App., 421 S.W.2d 790, 794–795 [7, 8]; Vitt v. Baer, Mo.App., 335 S.W. 2d 681, 685–686 [7].

The trial court found and adjudged that there was an actual delay of 84 days in completing the contract; that plaintiff was entitled to 75 days' excusable delay; that defendant was entitled to retain liquidated damages for a period of nine days, and was entitled to recover the sum of $132.20 on its counterclaim for water furnished. Judgment was rendered on December 19, 1966, for the plaintiff in the amount of $6,765.20, or the balance of the contract price claimed less $450.00 as liquidated damages, and $132.20 due the defendant for water furnished. As indicated, we agree with the trial court's finding except for the 15 days' allowance for the architect's delay. Accordingly, the cause is remanded with directions to enter a judgment for plaintiff in the amount of $6,015.20, together with interest thereon at the rate of six per cent per annum from and after February 8, 1962, the said judgment to be entered as of December 19, 1966, the date of rendition of the original judgment.

STONE and TITUS, JJ., concur.