DICON, INC., a corporation, Plaintiff,

v.

CLEARSPAN CONSTRUCTION COMPA-
NY, INC., and Marben Corporation, De-
fendant and Third-Party Plaintiff,

v.

MARX & BENSDORF, INC., a
corporation, Defendant.

No. S77–0079C.

United States District Court,
E. D. Missouri,
Southeastern Division.

March 20, 1979.

Glen A. Altman, Sterling & Altman, Fair-
view Heights, Ill., for plaintiff.

Forest M. Norville, Bruce & Southern,
Memphis, Tenn., W. Clifton Banta, Jr., Ban-
ta & Hopkins, Charleston, Mo., John L. Oli-
ver, Jr., Oliver, Oliver & Jones, Cape Girar-
deau, Mo., David E. Blanton, Blanton, Rice,
Sickal, Gilmore & Winchester, Sikeston,
Mo., for defendant and third party plaintiff.

MEMORANDUM

WANGELIN, District Judge.

The above entitled action arose from the
construction of a fifty unit leased housing
project in Charleston, Missouri, known as
Project MO 12–3. The case was tried to the
Court sitting without a jury. The following

discussion constitutes the Court's findings of fact and conclusions of law.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, there being complete diversity of citizenship among the parties, and the amount in controversy exceeding the sum of Ten Thousand Dollars ($10,000), excluding interest and costs.

Defendant and third-party plaintiff Marben Corporation (hereinafter Marben) was the developer of the "turnkey" project, see 24 C.F.R. § 1272 *et seq.* (1975), who was to arrange for its financing and construction and then transfer the completed project over to a not-for-profit corporation, which in turn leases it to a housing authority. The developer's function is to arrange for financing of the project, approval of the plans from the Department of Housing and Urban Development (HUD) (HUD in turn enters into an annual contribution contract providing a fixed subsidy to the Housing Authority) and cause construction of the project.

Clearspan was asked to submit a bid on the project as general contractor, and Marben forwarded a contract for construction of the project to Clearspan dated July 27, 1972. In a letter dated August 18, 1972, Robert Lafferty, Senior Vice President of Marben, acknowledged that Clearspan's signature on the construction contract dated July 27 was conditioned upon final approval of the plans and specifications by the HUD area office in St. Louis, Missouri. The letter went on to indicate that the final contract price would also be subject to revision after subcontractor bids were obtained.

Clearspan requested on September 22, 1972 that their May 1, 1973 completion deadline on the project be extended equal to the amount of time which elapsed, between execution of the contract and final approval of the plans by HUD, and on October 16, 1972 requested a June 16, 1973 deadline. In a generally worded letter dated November 15, 1972, after the entrance of Dicon, Marben agreed to extend the completion date without specifying a deadline.

As the above negotiations were taking place and before Clearspan could begin construction, David Bonner, their principal superintendent on the project, was killed in an automobile accident. Clearspan Construction Company was purchased by and merged into Redman Industries.

On account of the foregoing circumstances, Clearspan entered into negotiations with Marben to remove itself as the project's general contractor. Clearspan approached Dicon, who indicated their willingness to assume the role.

Finally, after several discussions, Marben learned that it could not formally substitute general contractors because of the necessity of individual consent from all the project's bond holders. The parties agreed to carry out the substitution by redrafting the agreement and calling it a subcontract. This Court finds that the substance of the transaction was clearly and convincingly a novation whereby Marben, Clearspan and Dicon mutually agreed to discharge Clearspan from its obligations as general contractor and substitute Dicon in its stead. *McHenry v. Claspill*, 545 S.W.2d 690, 692 (St.L.Mo.App.1976); *Charles Kahn & Company v. Sobery*, 355 F.Supp. 156, 162 (E.D.Mo.1972). The conduct of the parties after the agreement is fully consistent with this determination, at least as to events transpiring prior to the genesis of this litigation.

Resolution of this issue is dispositive of various indemnity claims in the case. It will therefore be ordered that Dicon's claim against Clearspan be dismissed without prejudice, that Marben's cross-claim against Clearspan be dismissed without prejudice, that Clearspan's counter-claim against Dicon be dismissed without prejudice, that the cross-claim of Clearspan against Marben be dismissed without prejudice, and that Clearspan's third-party complaint against Marx & Bensdorf, Inc. be dismissed without prejudice.

All that remains is a determination of Dicon's claim against Marben, since Marben in its reply brief has stated that it is no longer pursuing its counterclaim. Marben's counterclaim against Dicon will therefore be dismissed without prejudice.

Dicon's contract with Marben, executed November 7, 1972, provided for a $650,000 contract price and a June 1, 1973 completion date. Dicon argues entitlement to Clearspan's proposal to Marben that the completion date be extended equal to the delay in securing final plans from HUD. This proposal for extension of time is important in that the contract between Dicon and Marben provided for the assessment of liquidated damages in the amount of $200 per day for delay in completion of the project. The aforesaid contract also contained a provision incorporating the Marben-Clearspan contract of July 27, 1972. As of November 7, 1972 final plans had not been approved by HUD, and in fact were not forthcoming until May 16, 1973.

■ The Court has previously noted that in a letter dated November 15, 1972, Marben agreed with Clearspan "to extend the completion date and all other terms of the contract to your contract". However, if the communications between the parties are taken in logical sequence, the above quoted language applies to the October 16, 1972 letter from Clearspan to Marben requesting a June 16, 1973 completion date, and not the letter from Clearspan to Marben written on September 22, 1972 requesting a grace period concomitant with any delay in receiving plans from HUD. As such, the Court finds the completion date for the Dicon-Marben contract to be June 16, 1973. Plaintiff argues that the delay in obtaining a final set of approved plans prevented their performance and therefore the contract completion date should nonetheless be extended by an amount equal to the delay. This argument finds very little evidentiary support. It is uncontroverted that work on the project continued from and after the date Dicon took over the job. Indeed, requisitions submitted by Dicon to Marben in April and May of 1973 show continuing progress on the project. As to alterations in the plans by HUD which required additional work, or alteration to work previously done, the Court finds that Dicon assumed the risk of any delays occasioned by the absence of final plans from HUD by signing a contract with a fixed completion date

with full knowledge that no final plans had yet been received by HUD. Further, it is apparent to the Court that Dicon itself caused or contributed to cause many time problems. Dicon supplied a labor force which was unfamiliar with component panel projects. Dicon failed to adequately supervise the brick work on the project thus necessitating taking the bricks off four buildings, at least one of the buildings was laid out backwards and required corrective work. Dicon's supervisor created problems by using an old set of plans after being advised to use a revised set.

■ The completion date of the project must be determined for the purpose of computing Marben's set off for liquidated damages. Dicon contends that February 4, 1974 was the completion date, while Marben argues that the project was completed on February 28, 1974. The difference arises from the fact that opinions as to the project's stage of completeness were solicited from two different architects. The Court finds that only the opinion of architect William Bekemeyer is controlling in that he was the designated architect on the project who, by virtue of the parties contract, had had the authority to determine the date of substantial completion. Architect Thomas Tyrd had no authority by virtue of the contract documents to determine the date of substantial completion. Bekemeyer's opinion that the project was substantially complete on February 4, 1974, although some items remained to be completed is congruent with what constitutes substantial completion under Missouri law. See, Southwest Eng'r Co. v. Reorganized School District R–9, 434 S.W.2d 743, 751 (Spr.Mo.App.1968).

Therefore, the Court finds that Marben's set off for liquidated damages for late completion of the project to be $46,400.00, representing a total of 232 days. This amount must be adjusted, however, by the number of working days lost due to weather conditions. The contract between the parties provided that "all claims for extension of time shall be made in writing to the archi-

tect no more than twenty days after the occurrence of the delay; otherwise they shall be waived". Dicon has offered their exhibits 35, 36, 37 and 38 as evidence of their compliance with the above quoted contract provision. Exhibit 35 is a letter from Dicon to Marben dated January 11, 1973 which outlines weather conditions on the construction site from October 9, 1972 to January 5, 1973.

While the Court is willing to accept the letter to Marben as "a claim . . . to the architect" it is clear that any delays experienced prior to December 23, 1972 (twenty days previous to the date of the letter) were waived by Dicon under the provisions of the contract. Further, Dicon did not even begin work on the project until after November 7, 1972. During the December 23, 1972 to January 11, 1973 period, the Court finds that an extension of five days is allowable.

Plaintiff's exhibit 36 is dated March 23, 1973. Thus all claims for extensions prior to March 3, 1973 were waived by Dicon. Between the 3rd and 23rd of March, 1973, the Court finds that an extension of six and one-half (6½) days is allowable.

Plaintiff's exhibit 37 is dated May 28, 1973. From May 8, 1973 to May 28, 1973, the Court finds that an extension of three days is allowable.

Plaintiff's exhibit 38 is a letter from architect Bekemeyer to Dicon in which he states that a reasonable total of working days lost due to weather conditions would be 98½ working days. Although the letter refers to "the daily work reports on the Charleston, Missouri Housing Project there is no record evidence from which this Court could make a finding of fact that any or all of those reports were timely made claims to the architect as per the requirement in the contract.

■ On the basis of plaintiff's above mentioned exhibits, the Court finds that an extension of the contract completion date of fourteen and one-half (14½) days is allowable. This amounts to a reduction of $2,900.00 in liquidated damages.

The parties have stipulated that of the $650,000 contract price, $515,151.45 was paid from the construction fund account pursuant to the contract. Further, it is undisputed that $37,348.80 should be credited against the contract price for payments to subcontractors and for a settlement on landscape work.

Dicon, by virtue of a temporary funding agreement dated December 26, 1973 was advanced $44,000.00 by Marben and Clearspan.

Thus, prior to the addition of contract "extras" the Court finds that after proper set offs the amount due and owing to Dicon is $9,999.75.

■ There remains to be decided the issue of contract "extras". Dicon argues that by reason of the previous agreements between Marben and Clearspan, that any revisions necessary in the plans and specifications by reason of obtaining HUD approval would automatically be included as price increases. Marben insists that none of Dicon's "extras" constitute valid claims in that no "change orders" were ever signed by the architect and the owner. Mr. Ramsey of Dicon testified that Dicon compiled a claim for the "extras" on or about July 16, 1974. Section 12.2.1 of the General Conditions of the Contract provides that:

> [i]f the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice thereof within twenty days after the occurrence of the event giving rise to such claim. This notice shall be given by the Contractor before proceeding to execute the Work, except in an emergency endangering life or property . . . No claim shall be valid unless so made . . .

Dicon's claim rests entirely upon correspondence between Marben and Clearspan prior to Dicon's involvement in the project. While the contract price was being negotiated upwards, to $598,281.00, the amount of the contract was to be altered after the final compilation of Clearspan's subcontractor bids was obtained. This resulted in

altering the $598,281.00 figure to $631,-000.00.

The Court finds that the agreement between Dicon, Clearspan and Marben in no way abrogated Dicon's obligation to submit change orders as required by the contract. Dicon not having complied with condition precedent contained in Section 12.2.1 is therefore barred from recovering any contract extras. *Southwest Eng'r Co. v. Reorganized School District R–9, supra.*

To recapitulate the Court's findings, the following computation is included:

| | |
|---|---|
| $650,000.00 | Contract price |
| – 515,151.45 | Paid from Construction fund account |
| – 37,348.80 | undisputed set offs |
| – 43,500.00 | liquidated damages |
| – 44,000.00 | Paid from Temporary Funding Agreement |
| $ 9,999.75 | |

The Court further finds that there has been a true dispute over the amount owed on the contract, and that interest on the judgment should not be allowed from February 4, 1974.